**BURLINGTON NORTHERN RAILROAD CO., a Delaware corporation, Plaintiff,**

v.

**WOODS INDUSTRIES, INC., et al., Defendants.**

**No. C88–654–FVS.**

United States District Court, E.D. Washington.

Feb. 26, 1993.

Thomas F. Kingen, Paul J. Lawrence, Craig S. Trueblood, Preston Thorgrimson Shilder Gates & Ellis, Spokane, WA, for plaintiff.

Elmo F. Jewell, Yakima, WA, pro se.

Russell C. Love, Thorsrud Cane & Paulich, Seattle, WA, for Elmo F. Brewer, defendant and defendants, et al.

Steven W. Hale, Barrett Hale Gilman, Seattle, WA, for Merck & Co., defendant.

Richard W. Elliott, Davis Wright Tremaine, Bellevue, WA, for ICI Americas, Inc., defendant, and defendants, et al.

Jane Doe Jewell, Yakima, WA, pro se.

Randy J. Aliment, P. Arley Harrel, Mark M. Myers, Williams Kastner & Gibbs, Se-

attle, WA, for Rhone–Poulenc, Inc., a foreign corporation, third-party defendant, and defendants, et al.

Thomas M. Fitzpatrick, William L. Neal, Stafford Frey Cooper & Stewart, Seattle, WA, for Stauffer Chemical Co., defendant.

Walter G. Meyer, Meyer & Fluegge, Yakima, WA, for Hansen Fruit & Cold Storage Co., defendant.

Clark H. Richards, Lukins and Annis, Spokane, WA, for Tri–River Chemical Co., Inc., defendant.

Robert F. Bakemeier, Bogle & Gates, Seattle, WA, for Hooker Chemical, defendant.

D. Bernard Zaleha, and Bruce M. Smith, Rosholt Robertson & Tucker, Boise, ID, for L.H. Haslam, defendant.

James L. Phillips, Preston Thorgrimson Shidler Gates & Ellis, Bellevue, WA, for Burlington Northern R.R. Co.

## ORDER DENYING SUMMARY JUDGMENT

VAN SICKLE, District Judge.

THE FOLLOWING motions are before the Court: (1) Hansen Fruit & Cold Storage Company's motion for summary judgment (Ct.Rec. 76); (2) Burlington Northern Railroad's motion to strike the Declaration of Gary Hansen (Ct.Rec. 97); and (3) Burlington Northern's motion to dismiss its Third Cause of Action (Ct.Rec. 125).

## I. BACKGROUND

### A. CERCLA

In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9657. As amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986), CERCLA is intended "to provide the federal government with the means to effectively control the spread of hazardous materials from inactive and abandoned waste disposal sites," and "to affix the ultimate cost of cleaning up these disposal sites to the parties responsible for the contamination." *Kaiser Aluminum & Chemical*

Corp. v. Catellus Develop. Corp., 976 F.2d 1338, 1340 (1992) (citation omitted). To that end, CERCLA is to be construed liberally. Id.

■■■ A private party may bring an action under CERCLA to recover response costs. 42 U.S.C. § 9607(a). See 3550 Stevens Creek Assoc. v. Barclays Bank of Cal., 915 F.2d 1355, 1357 (9th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991). In addition, a defendant which has been found liable for response costs may seek contribution from other persons responsible for the release or threatened release of hazardous substances. 42 U.S.C. § 9613(f)(1). See 2 Cooke, The Law of Hazardous Waste—Management, Cleanup, Liability and Litigation § 14.01[6][c][iv] at 14-135 (Susan M. Cooke ed., 1992). To date, courts have not made a sharp distinction between cost recovery actions and contribution actions. Id. at § 16.01[4][a].

### B. Burlington's Cost Recovery Action

Burlington owns an approximately four-acre parcel of property in Yakima which is sometimes referred to as the "Woods site." (Declaration of James L. Phillips (Ct.Rec. 94), Consent Order at 4.) Between 1945 and 1985, a number of individuals and business entities used the site for pesticide formulation. Id.

In 1985, the Environmental Protection Agency ("EPA") invoked CERCLA's provisions to force cleanup of the Woods site. As part of the process, Burlington was ordered to take steps to limit contamination, and to perform tests to determine the extent of damage. (Phillips Declaration at 5–6.) In the interim, additional orders have been issued. The most recent is an Amended Administrative Consent Order which was executed in 1990. (Phillips Declaration at 1–2.)

Burlington filed this action in 1988 seeking to recover cleanup costs. Since then, it has amended its complaint several times to add new defendants as its investigation has identified other potentially responsible persons.[1]

One of the defendants is Hansen Fruit & Cold Storage Company (hereinafter "Hansen"). Hansen leases a parcel of real property immediately adjacent to the Woods site. For several decades, Hansen has processed and stored harvested fruit there.

It is alleged that Hansen is liable for cleanup costs under CERCLA for either of two reasons. First, that Hansen allowed hazardous pesticide residue to escape while it was processing harvested fruit. Second, that Hansen used contaminated building materials to fill in a portion of its leasehold.

## II. SUMMARY JUDGMENT

Hansen moves for summary judgment. Its motion must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A material fact is one which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact raises a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. It has been suggested that "[t]his burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always

---

1. Two of the eleven causes of action in Burlington's Third Amended Complaint (Ct.Rec. 47) plead CERCLA claims. The First Cause of Action alleges the defendants are liable for "response costs." Id. at 15–16. The Second Cause of Action seeks contribution. Id. at 17.

remains on the moving party." *Celotex,* 477 U.S. at 330, 106 S.Ct. at 2556 (Brennan, J., dissenting, but agreeing with majority regarding standard for summary judgment); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. Supp. 1992). According to this view, "The manner in which [the initial burden of production] can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial." *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557. If the nonmoving party will bear the burden of persuasion at trial, the party moving for summary judgment may satisfy its burden of production under Rule 56 either "by submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *High Tech Gays v. Defense Industrial Secur. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990) (citing *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557).

If the party moving for summary judgment satisfies its initial burden of production, the nonmoving party must set forth *"specific facts* showing that there is a genuine issue for trial." *T.W. Electric Service v. Pacific Electrical Contractors,* 809 F.2d 626, 630 (9th Cir.1987) (emphasis in original).

## III. ELEMENTS OF COST RECOVERY ACTION

Whether a disputed fact is "material" is "determined by the substantive law governing the claim or defense." *T.W. Electric Service,* 809 F.2d at 630 (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Here, the question of materiality must be decided in the context of a CERCLA private cost recovery action. To prevail in such an action, Burlington must prove the following elements:

■ First, that the defendant falls within one of the four classes of persons subject to CERCLA liability. 42 U.S.C. § 9607(a). *See Kaiser Aluminum,* 976 F.2d at 1340. The list of potentially liable persons includes:

(1) the owner and operator of a ... facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another ... entity and containing such hazardous substances, and

(4) any person who ... accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

42 U.S.C. § 9607(a).

Second, that a CERCLA "facility" exists. 42 U.S.C. § 9601(9). *See Stevens Creek,* 915 F.2d at 1358; *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989).

Third, that a "hazardous substance" has been "released" (or threatens to be released) from the defendant's facility. 42 U.S.C. §§ 9601(14), (22); 42 U.S.C. § 9607(a)(4). *See Dedham Water Co. v. Cumberland Farms Dairy,* 889 F.2d 1146, 1150 (1st Cir. 1989).

Fourth, that the release or threatened release has caused the plaintiff to incur response costs which are " 'necessary' and 'consistent with the national contingency plan.' " *Stevens Creek,* 915 F.2d at 1358 (quoting 42 U.S.C. § 9607(a)(4)).

## IV. LIABILITY BASED UPON DRENCHING OPERATION

### A. Summary of Allegations

After harvested fruit arrives at the warehouse, the fruit is drenched with a chemical solution to protect it from disease. (Deposition of Gary Hansen, at 45–46.) [2] According to Harper Grimes (Burlington's expert), drenching rinses off whatever pesticide resi-

---

**2.** (Affidavit of Jerome R. Aiken (Ct.Rec. 102), unmarked exhibit.)

due remains on the fruit. The residue is then carried away in the solution. (Declaration of Harper D. Grimes (Ct.Rec. 95), at 3–4.)

Verle Woods testified that he has seen fruit being drenched at Hansen's warehouse, and that during the process of drenching, a significant quantity of liquid spilled onto the surrounding asphalt. From there, it flowed toward the contaminated site, sinking into the ground when it reached the boundary. (Deposition of Verle Woods, at 800–01.)[3]

Gary Hansen was asked whether he had read the pertinent portions of Verle Woods's deposition testimony. He said that he had. (Hansen Deposition, at 20).[4] He then conceded that, during drenching, liquid escaped and flowed south toward the Woods site. *Id.*

### B. Hansen's Response

Hansen argues that Harper Grimes's opinion lacks an adequate foundation, and should be stricken. According to Hansen, once the record has been redacted, Burlington cannot prove two essential elements of this claim. Namely, that Hansen's drenching operation is a facility, *see* 42 U.S.C. § 9601(9), and that a hazardous substance has been released. 42 U.S.C. § 9707(a)(4). (Memorandum of Law in Support of Motion for Summary Judgment (Ct.Rec. 77) at 4–6.)

### C. Analysis

#### 1. Admissibility of Grimes's opinion

■ Of the residue which was rinsed off during drenching, not all escaped. Of the residue which did escape, Grimes has no idea how much actually flowed onto the Woods site. Thus, Hansen submits that Grimes's opinion amounts to little more than speculation, and should be disregarded.

As authority, Hansen cites *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988), a case in which the Fifth Circuit held that a district court need not consider expert opinion which is unreliable or without foundation. In *Washington,* the issue was whether exposure to asbestos had caused colon cancer. When the defendant moved for summary judgment, the only evidence the plaintiff submitted to establish causation was the affidavit of a physician who "never actually concluded that [the plaintiff's] cancer was caused by asbestos exposure. [The physician] simply state[d] that such a risk [was] statistically probable and [could not] be ruled out on the basis of the tests performed by the treating physicians." 839 F.2d at 1123.

Here, by contrast, Grimes opined that the drenching solution which escaped from Hansen's operation contained hazardous pesticide residue. Although Grimes acknowledged that part of any pesticide which has been applied to a crop will be washed off prior to harvest, *see* Deposition of Harper Grimes at 21–22,[5] he insisted that some will remain. He based his conclusion upon his extensive experience with the use and application of pesticides, and unnamed scientific research which other experts have conducted. *Id.* at 23–24.

Under the circumstances, Grimes's opinion has an adequate foundation. Thus, it may be ignored only if the Court first determines that Grimes lacks credibility, something the Court is not permitted to do at this stage in the proceedings. *T.W. Electric Service,* 809 F.2d at 630 (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). To the contrary, not only must the Court assume the truth of Burlington's evidence, *id.,* but any " 'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Corp. v. Zenith Radio,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

#### 2. Drenching operation as a facility

■ It is undisputed that the Woods site is a CERCLA facility. The question, then, is whether Hansen's leasehold is part of the

---

3. (Declaration of James L. Phillips (Ct.Rec. 94), unmarked exhibit.)

4. *Id.*

5. (Affidavit of Jerome R. Aiken (Ct.Rec. 118), unmarked exhibit.)

Woods facility,[6] or whether it constitutes a separate CERCLA facility. Burlington alleges the latter. (Third Amended Complaint at 13.) Burlington contends that hazardous substances migrated from Hansen's facility to the Woods site. *Id.*[7]

■ Under CERCLA, a "facility" encompasses "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9)(B). The term has been "construed very broadly to include 'virtually any place at which hazardous wastes have been dumped, or otherwise disposed of.'" *United States v. Northeastern Pharmaceutical,* 810 F.2d 726, 743 (8th Cir. 1986) (quoting *United States v. Ward,* 618 F.Supp. 884, 895 (E.D.N.C.1985)), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

Hansen's drenching operation was designed (in part) to clean harvested fruit. As part of the process, hazardous pesticide residue was rinsed off and disposed of. Thus, the drenching operation constitutes a separate CERCLA facility. *See* 2 Cooke, *supra* § 14.01[4][d].

3. Release of hazardous substance

Hansen next argues that the chemicals used in the drenching process are not hazardous substances, and that Burlington has failed to establish that any pesticide residue was released during the drenching process. (Hansen Fruit's Response (Ct.Rec. 117).)

With respect to the first prong of Hansen's argument, the record is not sufficiently well developed to allow the Court to determine whether the various chemicals which have been used in the drenching solution are hazardous substances as defined by 42 U.S.C. § 9601(14). Consequently, the Court declines to decide that issue at this time.

With respect to the second prong, Hansen does not deny that certain pesticides which orchardists have traditionally applied to their growing crops are hazardous substances. However, it does deny that any hazardous pesticide residue was released as a result of drenching.

■ A "release" is broadly defined to include any spilling, leaking, or discharge of a hazardous substance. 42 U.S.C. § 9601(22). *See Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 669 (5th Cir.1989). Given the record, a reasonable jury could find that at least small quantities of pesticide residue were rinsed off by the drenching solution; that some of the solution escaped; and that it carried pesticide residue with it. Such evidence is sufficient to raise a genuine issue regarding the release of a hazardous substance from the Hansen facility.[8]

## V. LIABILITY BASED UPON FILL MATERIAL

### A. Summary of Allegations

At some point prior to 1960, one of Verle Woods's predecessors stored pesticides in a building on the site. (Woods Deposition at 385.)[9] Because the pesticides were pack-

---

**6.** *Cf. United States v. Stringfellow,* 661 F.Supp. 1053, 1059 (C.D.Cal.1987) (nothing in CERCLA's provisions indicates "that a 'facility' must be defined by or be coextensive with an owner's property lines").

**7.** Were this a "one-site" case, proof of proximate cause would not be required. *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). In a "two-site" case, the question of causation is more complicated. *See* 2 Cooke, *The Law of Hazardous Waste—Management, Cleanup, Liability and Litigation* § 14.01[5][c][v] (Susan M. Cooke ed., 1992). While Burlington is under no obligation to match specific waste to a particular defendant, *United States v. Ottati & Goss, Inc.,* 630 F.Supp. 1361, 1402 (D.N.H.1985), some nexus must be established between the release of hazardous wastes at one facility and the recovery of costs for cleanup at another. *See Artesian Water Co. v. New Castle County,* 659 F.Supp. 1269, 1282–83 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988).

**8.** The fact that only minute quantities of pesticide reside may have been released is not a defense to liability. A substance is hazardous regardless of the amount involved. *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 260–61 (3rd Cir. 1992). Similarly, nothing in the definition of the term "release" can be construed to require proof of some threshold quantity. *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 669 (5th Cir.1989).

**9.** (Declaration of Mark M. Myers (Ct.Rec. 113), Exhibit A.)

aged in paper bags, Woods is certain that some sifted out. *Id.* at 807.

The bags were placed on the floor of the basement, *id.* at 1140, where they were exposed to flooding. *Id.* at 1139.[10] Woods believes the floor and walls became contaminated. *Id.* at 806–08.

According to Woods, the terms of his lease were modified in 1960. *Id.* at 140. Woods says that, as a result, he was instructed to demolish the north forty-eight feet of the building in which pesticides had been stored. *Id.* at 141, 805–06. That section of the property was added to Hansen's leasehold. *Id.* at 141.

When demolition did not progress quickly enough, Hansen ordered Woods's crew to pull the walls down and push them into the hole. *Id.* at 806. Hansen Fruit then filled in the remainder of the hole with material trucked in from some undisclosed location. (Affidavit of Don Johnson (Ct.Rec. 121) at 2.) The area was later paved. *Id.*

### B. Hansen's Response

As previously noted, there are four classes of persons who are subject to CERCLA liability. 42 U.S.C. § 9607(a). *See Stevens Creek*, 915 F.2d at 1357–58. Hansen denies that it is either an owner or operator of a facility, *see* 42 U.S.C. § 9607(a)(1), or that it arranged for the disposal of hazardous substances there. 42 U.S.C. § 9607(a)(3).

### C. Analysis

#### 1. Owner/Operator

■ Because Burlington is seeking response costs for contamination at the Woods site, Hansen insists that Burlington must prove that Hansen is the owner or operator of that facility in order to recover under § 9607(a)(1). (Hansen Fruit's Memorandum in Response to Certain Defendants' (Ct.Rec. 120) at 4–5.)

Hansen relies heavily upon *Northeastern Pharmaceutical*, *supra*. There, a corporation and two of its officers disposed of hazardous wastes at an independently-owned farm which was seven miles distant from the manufacturing plant at which the wastes were generated. 810 F.2d at 729–30. According to the Eighth Circuit, the farm was the relevant CERCLA facility for purposes of determining § 9607(a)(1) liability. 810 F.2d at 743. Since the corporate officers neither owned nor operated the farm, they could not be held liable under § 9607(a)(1) for contamination which occurred at that facility. 810 F.2d at 743.[11]

In *Northeastern Pharmaceutical*, the facility at which the release occurred and the facility at which response costs were incurred were one and the same. Thus, § 9607(a)(1) liability turned upon whether the defendants owned or operated that facility. Here, by contrast, Burlington alleges that the Hansen leasehold is a separate facility—even though it is adjacent to the Woods site. Burlington contends that a release (or threatened release) on the Hansen leasehold forced it to incur response costs at the Woods site.

Given the nature of Burlington's allegations, it makes no difference whether Hansen owned or operated the Woods site. The question is whether Hansen is the owner of a facility; whether a release (or threatened release) occurred there; and whether the release has caused Burlington to incur response costs at the Woods site.

In that regard, the record reflects that the north forty-eight feet of the building described by Verle Woods became a part of Hansen's leasehold in 1960. Since Hansen asserted control over the use of the property, Hansen is considered the "owner" for purposes of § 9607(a)(1) even though it is only a lessee. *See United States v. SCRDI*, 653 F.Supp. 984, 1003 (D.S.C.1984), *aff'd in part, vacated in part*, 858 F.2d 160 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156,

---

10. There was a "sump" in the basement. When the level of the groundwater rose, water overflowed into the basement. (Woods Deposition, at 809.)

11. Ultimately, the corporate officer who arranged for hazardous waste to be transported to

the farm was held liable under 42 U.S.C. § 9607(a)(3). *United States v. Northeastern Pharmaceutical*, 810 F.2d 726, 743–44 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

104 L.Ed.2d 1019 (1989); 2 Cooke, *supra* § 14.01[5][c][ii].

■ A reasonable jury could find that contaminated building materials are located on the property which Hansen leases. The site is therefore a CERCLA facility. 42 U.S.C. § 9601(9)(B). *See Northeastern Pharmaceutical*, 810 F.2d at 743.[12]

A jury could further find that Hansen instructed Woods's crew to push the walls of the building into the basement to fill it in, and that the buried building materials have contaminated (or threaten to contaminate) the groundwater. Such findings would establish the existence of either a release or a threatened release. 42 U.S.C. § 9601(22). *See Amoco Oil Co.*, 889 F.2d at 669.

■ Finally, while there is evidence from which a jury could find that hazardous substances migrated from the Hansen leasehold to the Woods site, such a determination is not essential to liability. It is important to remember that CERCLA does not require proof of proximate cause, *i.e.*, that hazardous substances actually migrated from the Hansen leasehold onto the Woods site. *See* Cooke, *supra*, § 14.01[5][c][v]. Hansen can be held liable for costs incurred responding to a threatened release. *Dedham Water Co. v. Cumberland Farms Dairy*, 889 F.2d 1146, 1152–54 (1st Cir.1989).

In *Dedham Water*, for example, the district court found that an off-site deposit of hazardous wastes had not migrated into the plaintiff's wells, and ruled for the defendant. 889 F.2d at 1149. The First Circuit reversed. It held that in a "two-site" case, the plaintiff need not prove actual migration of hazardous substances. The existence of a threatened release is sufficient to create liability under § 9607(a)(1). 889 F.2d at 1153–54.

### 2. Arranger

■ Another class of persons subject to CERCLA liability includes those who arrange for disposal of hazardous substances. 42 U.S.C. § 9607(a)(3). *Northeastern Pharmaceutical*, 810 F.2d at 743. Hansen submits that it cannot be held liable as an "arranger" since it did not own the building materials which were buried. However, ownership is not an essential element of liability under § 9607(a)(3). *United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1382 (8th Cir.1989). The critical question under that section is whether the defendant had authority to control the handling and disposal of hazardous substances. *Id.* (citing *Northeastern Pharmaceutical*, 810 F.2d at 743–44).

■ Hansen's reliance upon *Jones–Hamilton v. Beazer Materials & Services*, 973 F.2d 688 (9th Cir.1992), is misplaced. There, the Court of Appeals cited *Aceto* with approval. It held that a pesticide supplier who retained ownership of materials which it sent to a formulator qualified as an arranger under *Aceto*. 973 F.2d at 695.

Here, a reasonable jury could find that Hansen instructed Woods to use contaminated building materials to fill the northern end of the basement, and that Woods complied. Although Hansen may not be responsible for bringing hazardous waste to the facility, Hansen allegedly caused the waste to be dispersed across the site. That amounts to arranging for disposal. *See Kaiser Aluminum*, 976 F.2d at 1342 (applying principle in the context of § 9607(a)(2)); *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir.1988).[13]

IT IS HEREBY ORDERED:

1. Hansen Fruit and Cold Storage Company's motion for summary judgment (Ct. Rec. 76) is denied.

---

12. That the facility was contaminated when Hansen acquired it is not a defense to liability under 42 U.S.C. § 9607(a)(1) given Hansen's subsequent role in dispersing contaminated building materials at the site. *See Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir.1988).

13. Because Hansen's motion to dismiss Burlington's CERCLA claims is being denied, the Court declines to address Hansen's motion to dismiss Burlington's state-law claims.

2. Burlington Northern Railroad's motion to strike the Declaration of Gary Hansen (Ct.Rec. 97) is denied.

3. Burlington Northern's motion to dismiss its Third Cause of Action (Ct.Rec. 125) is granted. Burlington's Third Cause of Action is dismissed with prejudice.

4. Stauffer Chemical Company's motion to dismiss is denied as moot.

5. L.H. Haslam's motion to waive signature of local counsel on pleadings (Ct.Rec. 135) is granted. However, counsel appearing *pro hac vice* on behalf of Haslam shall continue to consult with local counsel.

IT IS SO ORDERED. The Clerk is hereby directed to file this order, enter judgment dismissing Burlington's Third Cause of Action with prejudice, and furnish copies to counsel.