**ALLIED ERECTING AND DISMANTLING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES STEEL CORPORATION, Defendant.**

**Civ. A. No. 86–1337.**

United States District Court, W.D. Pennsylvania.

March 20, 1992.

1224

Christopher Opalinski, Pittsburgh, Pa., for plaintiff.

Wayne L. Emery, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEWIS, District Judge.

This case arose out of a series of contracts between Allied Erecting and Dismantling Company, Inc. ("Allied") and USX Corporation ("USX"), formerly known as United States Steel Corporation, for the

dismantling of certain USX steel mill facilities throughout the eastern half of the country. By October of 1991, after half-a-dozen years of litigation, four judges, two hundred docket entries and three amended complaints and counterclaims, the parties' positions had evolved to the following:

Allied contends that as a result of various actions, inactions and contractual breaches by USX, it is due approximately sixty-seven million dollars ($67,000,000) in damages. That sum of damages, according to Allied, directly flows from a wrongful termination of its contracts with USX, and accurately reflects various contract balances due and owing, amounts due for extra work, claims for lost profits and loss of productivity, losses incurred on the forced sale of non-ferrous materials and the lost value to Allied of certain property improperly converted by USX to its own use.

USX counterclaims that various actions, inactions and contractual breaches by Allied resulted in approximately twenty-five million dollars ($25,000,000) in damages. That sum of damages, according to USX, directly flows from Allied's abandonment of its contractual obligations, illegal handling of asbestos and misappropriation of non-ferrous materials, and accurately reflects the cost of completing Allied's work on certain projects, delay and lost opportunity costs and environmental remediation costs. USX also seeks punitive damages.

This, then, was the general state of the pleadings as of October 4, 1991, when USX filed a motion for leave to file a Further Amended Counterclaim (the "Motion") to add a count under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Allied opposed the Motion as untimely and futile, and both sides argued their positions before the court at the final pretrial conference held on October 11, 1991. At the conference, the court reserved a final decision on the Motion until USX submitted a statement "fleshing out" its barebones RICO counterclaim.

Instead of detailing its existing claim as the court had ordered, USX filed a Substituted Further Amended Counterclaim which sought to add four new counts based on theories of RICO liability radically different from those argued to the court a month before. For instance, even though all of the facts and circumstances giving rise to any possible RICO claim occurred no later than June of 1986, between October and November of 1991, USX decided to re-define both the membership of the "enterprise" and its basic purpose. This was done without leave of court. Such a transparent and untimely attempt to circumvent the meritorious arguments of opposing counsel will not be countenanced by the court. In deciding the Motion, the Further Amended Counterclaim filed with it on October 4, 1991, will be accepted as USX's final position on RICO. No arguments advanced in support of, or in opposition to, later formulations will be considered.[1]

---

1. The allegations in USX's Further Amended Counterclaim may be summarized as follows: From 1980 until 1986, Allied illegally handled asbestos and misappropriated non-ferrous materials to the detriment of USX (¶¶ 10–17, 20). Allied performed these misdeeds on behalf of an "enterprise" and/or "association in fact" consisting of Allied, Allied Gator, Inc., John Ramun, an officer and principal owner of Allied and Gator, and Michael Ramun, an officer of Allied, and "others unnamed herein" (¶ 6, 17). The purpose of the enterprise "was to acquire funds for [Allied] and Gator which were operating in separate industries and to permit [Allied] and Gator to provide the other financial support and a credit base to be called upon when and as necessary" (¶ 7). This series of criminal acts constitutes a "pattern" of "racketeering activity" under RICO (¶¶ 18, 19).

USX attempts to relate these factual allegations to the requirements of RICO by claiming that Allied violated 18 U.S.C. § 1962(a), (b), (c) and (d) by:

(a) receiving income derived, directly or indirectly, from said pattern of racketeering activity and investing such income, or a part of such income, or the proceeds of such income in the operation of the enterprise and association, Allied and Gator; (b) maintaining, directly or indirectly, its interest in and control of, the enterprise and association; (c) conducting or participating, directly or indirectly, in the conduct of the affairs of the enterprise and association, and (d) conspiring with Gator to violate 18 U.S.C. § 1962(a), (b) and (c) (¶ 19).

For the reasons set forth below, the Motion will be denied as untimely, unduly delayed, grossly prejudicial and futile.[2]

## DISCUSSION

Rule 1 of the Federal Rules of Civil Procedure directs that the rules "are to be construed to secure the just, speedy, and inexpensive determination of every action." This directive protects the integrity of the federal court system and the rights of its participants: litigants and lawyers, judges and jurors. Rule 1 also establishes a single, apparently unified, goal for the federal court system: the just, speedy and inexpensive resolution of conflicts. And yet, in practice, an inherent tension may exist between the justice and efficiency components of this goal.

A motion to file an amended pleading outside of the time frame established by the rules often brings this tension between justice and efficiency into play. On the one hand, a liberal amendment philosophy allows a party to present its best case to the fact finder and to avoid unjust penalties stemming from merely technical transgressions of the rules. On the other hand, if the federal court system allowed repeated and unrestricted amendments it would quickly implode, accomplishing neither justice nor efficiency.

Striking the appropriate balance between efficiency and justice when deciding whether to allow a motion to amend a pleading is committed to the sound discretion of the trial court. *See* Fed.R.Civ.P. 15(a); *Skehan v. Board of Trustees of Bloomsberg State College*, 590 F.2d 470, 492 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). In exercising its discretion, the court is guided by the Supreme Court's pronouncement that leave to amend should be freely granted in the interest of justice unless untimeliness, undue delay, bad faith, substantial prejudice to the adverse party or futility are present. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also*

*Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

### I. *Untimeliness, Undue Delay and Prejudicial Effect*

■ Despite the generous approach typically taken to the amendment of pleadings by the Court of Appeals for the Third Circuit, unexcused, burdensome or prejudicial delay provides a sufficient basis upon which to base a denial. *Compare Coventry v. United States Steel*, 856 F.2d 514, 519–20 (3d Cir.1988) (mere delay insufficient to justify the denial of leave to amend absent some showing of prejudice to the non-moving party or the trial court) *with Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991) (motion to amend complaint four-and-one-half months after plaintiff discovered new information and two months after discovery was closed is denied because such an amendment would place an unwarranted burden on the trial court and would be likely to prejudice the defendant) *and with Clark v. Township of Falls*, 890 F.2d 611 (3d Cir.1989) (motion to amend complaint one week after the close of discovery, three weeks before trial and a few months after plaintiff became aware of the post-complaint events giving rise to the proposed amendment is denied because the delay was unexcused and unduly prejudicial).

Similarly, the federal district courts sitting in Pennsylvania have held that delay—when accompanied by a deleterious ripple effect on a particular case or on the trial court's calendar—warrants the denial of an otherwise appropriate amendment. *Lorenz v. CSX Corp.*, 736 F.Supp. 650 (W.D.Pa. 1990) (Cohill, C.J.) (even though discovery had not yet begun, motion to amend complaint to add a RICO claim denied as untimely when made more than two years after suit was filed and based almost entirely on facts known for more than five

---

**2.** Allied's argument that USX's RICO claim is barred by the applicable statute of limitations and does not relate back to the filing of earlier counterclaims is not addressed here because of the patent untimeliness and legal insufficiency of USX's proposed amendment.

years); *Oy Tilgmann v. Sports Publishing Int'l, Inc.,* 110 F.R.D. 68, 70–71 (E.D.Pa. 1986) (motion to amend answer denied as prejudicial to plaintiff when made 14 months after suit was filed and after the close of discovery, and when plaintiff had a strong interest in proceeding to trial); *Transport Trailer Service, Inc. v. Upjohn Co.,* 506 F.Supp. 442, 443 (E.D.Pa.1981) (motion to amend answer denied as prejudicial to plaintiff when made two years after the original answer, a year-and-one-half after defendant aware of the additional defense and shortly after the case was placed in the "trial pool" and, during the interim, defendant attended two pretrial conferences and filed a pretrial memorandum without asserting the defense).

■ The delay and prejudice in this case are even more egregious than in the cases described above:

* First, more than five years elapsed between USX's original answer and counterclaim and its attempt to inject RICO into this litigation.

* Second, USX admits that it had actual knowledge of the events supporting its RICO claim for more than four years before asserting such a claim. Specifically, in December of 1987, USX alleged in an amended answer and counterclaim that Allied mishandled asbestos and misappropriated copper from the contract sites, the heart of the pattern of racketeering activity now complained of, but did not assert, or even allude to, a RICO claim at that time.

* Third, USX's Motion was made more than two years after completing a lengthy discovery period consisting of more than three dozen depositions, countless document requests and interrogatories. Nothing before the court indicates that Allied conducted this discovery cognizant of a lurking RICO claim.

* Fourth, USX did not mention a possible RICO claim at a pretrial conference in August of 1990, and filed the Motion one week before the final pretrial conference in October of 1991. In fact, as set forth in more detail earlier, USX attempted significantly to re-work its proposed

RICO claim a month *after* the final pretrial conference. At that conference, the parties were told that this case would proceed to trial in the spring of 1992.

* Fifth, the Motion was made after cross-motions for summary judgment were filed, briefed, argued and decided.

* Sixth, pretrial submissions (including witness lists, exhibit lists and proposed jury instructions) were filed two years prior to the Motion and updated by both parties the month before the Motion. Once again, nothing before the court indicates that Allied knew, or should have known, that RICO might be a part of this case when it mapped out the trial strategy embodied in its pretrial submissions. This has prejudiced Allied. For example, the "enterprise"—central to any RICO claim—is defined by USX to include nonparties to this litigation and still-unidentified "others." It is not reasonable to assume that Allied is prepared to defend at trial its relationship and activities vis-a-vis entities not a part of this litigation before October of 1991.

* Seventh, no one disputes that Allied is a financially ailing company that has waited for nearly half a dozen years for its day in court. Given this court's congested calendar and the five to six weeks of trial time already set aside for this case, that day in court would be postponed indefinitely if USX's Motion were granted.

* Eighth, and last, USX has offered absolutely no credible explanation for the delay.

Under the circumstances of this case, the cumulative effect of USX's unexcused delay would be severe prejudice to both Allied and the court. Even assuming that USX's Motion is motivated by the purest of intentions, such delay and prejudice is intolerable. Therefore, the Motion will be denied.

## II. *Futility*

■ Futility has long been recognized as an appropriate and independent ground for denying leave to add claims to a case. *See e.g., Chapman v. Sheridan–Wyoming*

*Coal Co.*, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 (1950); *Stephens v. Reed,* 121 F.2d 696 (3d Cir.1941). To allow a meritless claim to proceed to the motion to dismiss and motion for summary judgment stages is an abdication of judicial responsibility that serves neither justice nor efficiency. The duty to engage in a threshold inquiry regarding legal sufficiency is especially important in a case such as this one that is finally ready for trial after a lengthy, costly and exasperating pretrial history. Thus, if USX's proposed amendment fails to state a prima facie case under RICO, it must be rejected.

Congress did not intend to bring every pattern of racketeering activity within the reach of RICO. Even the liberal gloss applied by the courts to RICO has not altered this. RICO's express language makes a person guilty of a violation only if the pattern of racketeering activity, or the proceeds therefrom, affect an interstate enterprise in one or more of three specific ways. As set out in section 1962, these three "prohibited activities" may be summarized as follows:

(1) using or investing any income derived from a pattern of racketeering activity in which that person participated as a principal to establish, operate or acquire any interest in any enterprise (§ 1962(a));

(2) acquiring an interest in or control of an enterprise through a pattern of racketeering activity (§ 1962(b));

(3) conducting the affairs of an enterprise through a pattern of racketeering activity (§ 1962(c)). In addition, if two or more persons conspire to commit any of the above "prohibited activities," the conspiracy itself constitutes a separate violation of RICO (§ 1962(d)).

As discussed below, despite a superficial attempt to conform its pleading to the language of the statute, USX has failed to state a claim upon which relief may be granted under sections 1962(a)–(d).[3] There-

fore, its Motion must be denied as futile. Under the circumstances of this case, it would be singularly inappropriate to grant USX yet another opportunity to cure.

A. **Failure to State Claim Under Section 1962(a)**

■ Section 1962(a) "was primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Brittingham v. Mobil Corp.,* 943 F.2d 297, 303 (3d Cir.1991) (citations to legislative history omitted). Consistent with this original intent, section 1962(a) is violated only if the RICO victim's injuries are proximately caused by the "use or investment" of the racketeering income in the enterprise, rather than by the predicate acts. *Id.* at 303–05; *see also Glessner,* 952 F.2d at 708–09 (reiterating the investment injury requirement for section 1962(a) claims and citing consistent authority from other circuits).

■ USX's proposed RICO count alleges that Allied injured USX by reinvesting racketeering income in its own and Gator's operations. USX appears to be arguing that this reinvestment of allegedly dirty money propped up otherwise unprofitable operations, which allowed Allied and Gator to continue doing business with USX, which allowed Allied to continue to mishandle asbestos and misappropriate nonferrous metals, which ultimately resulted in financial loss for USX. The Court of Appeals for the Third Circuit has expressly and recently rejected just such an attenuated line of causation between "use or investment" and injury. *Brittingham,* 943 F.2d at 305; *accord Glessner,* 952 F.2d at 709.

The class in *Brittingham,* purchasers of Hefty "degradable" garbage bags, alleged that false and misleading statements were made in connection with the marketing of the bags. The complaint claimed injury by the use or investment of racketeering in-

---

**3.** This court, like the United States Court of Appeals for the Third Circuit, is concerned about the "alacrity" with which USX appears "to grasp at any theory of alignment of parties which might withstand dismissal. A RICO com-

plaint is not a mix and match game in which plaintiffs may artfully invoke magic words to avoid dismissal." *Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir.1991).

come because it "enabled the enterprise to continue its operations, and paid for defendants' perpetuation of their fraudulent activities, as a result of which plaintiffs and the members of the class have not received the goods they bargained for, and have paid excessive amounts of money for the goods they did receive." *Id.* at 303–04. The *Brittingham* court concluded that the alleged injury (i.e., paying inflated prices) resulted from the underlying fraudulent acts and not the use or investment of racketeering income. In dismissing the section 1962(a) count, the court explained the legal insufficiency of plaintiffs' reinvestment theory:

> Plaintiffs have neither alleged nor demonstrated a connection with the use or investment of racketeering income other than normal reinvestment of corporate profits. If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation. RICO's pattern requirement generally requires long-term continuing criminal conduct. Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act.

*Id.* at 305 (citation omitted).

Similarly, USX's alleged injuries are proximately caused by the predicate acts—the mishandling of asbestos and misappropriation of copper—not by the "use or investment" of racketeering income as required by the statute. Therefore, USX fails to state a colorable claim under section 1962(a).

### B. Failure to State Claim Under Section 1962(b)

■ Section 1962(b) concerns itself with a person acquiring or maintaining an interest in or control of an enterprise through a pattern of racketeering activity. This means that "the *object* of the activity be to gain an interest in or control of the particular enterprise." Rakoff and Goldstein, *RICO Civil and Criminal Law and Strategy* § 1.06[2] (1990) (emphasis in original).

■ Thus, under the facts pleaded by USX, a potential violation of section 1962(b) exists only if this court accepts that the "object" of counterclaim defendant Allied's alleged wrongdoing was to acquire or maintain an interest in or control of an enterprise consisting of itself, its related corporation Gator and the brothers Ramun, principal owners and operators of Allied and Gator.

This court rejects such a scenario as absurd on its face. First, it is nonsensical to speak in terms of Allied gaining control of or having an interest in the brothers Ramun. Second, Allied did not need to engage in a pattern of racketeering activity in order to acquire control of itself and Gator. Third, USX has failed to plead any of the facts necessary to demonstrate that Allied's grip on this supposed enterprise was somehow imperiled. Last, even if USX could show that Allied was struggling to maintain control of the enterprise, it has utterly failed to show what relevance the alleged racketeering acts might have to that struggle.

### C. Failure to State Claim Under Section 1962(c)

■ The language of section 1962(c) requires a finding that the "person" conducted or participated in the affairs of the "enterprise" through a pattern of racketeering activity. The Court of Appeals for the Third Circuit has held that the "person" charged with violating section 1962(c) must be distinct from the "enterprise." *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633–34 (3d Cir.1984); *see also Glessner,* 952 F.2d at 710–14 (reaffirming the vitality of the distinctiveness requirement in the Third Circuit). This distinctiveness requirement furthers the congressional purpose of preventing "the takeover of legitimate businesses by criminal and corrupt organizations." *Enright,* 751 F.2d at 633–34.

The Third Circuit has recently re-affirmed the *Enright* rule on facts close to those in this case. *Brittingham,* 943 F.2d

**1230**

at 300–303. In *Brittingham*, plaintiffs alleged an enterprise consisting of Mobil Corporation, Mobil Chemical Company, Mobil Oil Corporation, and various advertising agencies, arguing that this was "a group of individuals associated in fact." The Third Circuit dismissed plaintiffs' section 1962(c) claim, and held the alleged enterprise must be distinct from the defendant whether or not the group of individuals is "associated in fact."

> We believe a 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an 'association' of these individuals or entities. Consequently, the *Enright* rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf. The distinctiveness requirement ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted. Therefore, we must examine the enterprise allegation to determine whether it is no more than an association of individuals or entities acting on behalf of a defendant corporation.

*Brittingham*, 943 F.2d at 301.

In this case, USX has alleged an enterprise consisting of nothing more than "an association of individuals or entities acting on behalf" of Allied, the defendant corporation. The distinctiveness requirement, as set forth by *Enright* and applied by *Brittingham*, makes such allegations insufficient as a matter of law.

### D. Failure to State Claim Under Section 1962(d)

Section 1962(d) makes it unlawful to conspire to perform any of the activities prohibited by sections 1962(a), (b) and (c). Therefore, USX's failure to state a colorable claim against Allied under (a), (b) and (c) requires, by definition, the dismissal of the conspiracy theory as well.

### CONCLUSION

Granting USX's eleventh-hour motion for leave to amend its counterclaim to add a RICO claim would unduly delay the trial of this matter and prejudice Allied. Further, USX's RICO claim fails as a matter of law. Accordingly, leave to amend will be denied as untimely and futile.