The **FISHBEIN FAMILY PARTNERSHIP,**
Plaintiff,

v.

**PPG INDUSTRIES, INC. and Public Service Electric and Gas Company,**
Defendants,

**PUBLIC SERVICE ELECTRIC AND GAS COMPANY,** Defendant Third–Party Plaintiff,

v.

**UGI UTILITIES, INC. and John Does 1–25 (being fictitious names),**
Third–Party Defendants.

Civ. No. 93–653 (WHW).

United States District Court, D. New Jersey.

Dec. 29, 1994.

John Philip Beyel, McElroy, Deutsch & Mulvaney, Morristown, NJ, for Fishbein Family Partnership.

Joseph F. Lagrotteria, Karol Corbin Walker, Robinson, St. John & Wayne, Newark, NJ, for PPG Industries, Inc.

Clyde A. Szuch, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, Hugh J. Mahoney, John P. MacPhee, Public Service Elec. and Gas Co., Newark, NJ, for Public Service Elec. and Gas Co.

Sabrina A. Kogel, Greenbaum, Rowe, Smith, Ravin & Davis, Woodbridge, NJ, for UGI Utilities, Inc.

## AMENDED OPINION

PISANO, United States Magistrate Judge:

## INTRODUCTION

This matter comes before the Court upon the motion of third-party plaintiff Public Service Electric and Gas Company ("PSE & G") for leave to amend the third-party complaint.[1] Through the amended third-party complaint, PSE & G seeks to expand its claim against defendant UGI Utilities, Inc. ("UGI") for reimbursement and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613 and the New Jersey Spill Compensation and Control Act ("Spill Act") N.J.S.A. 58:10–23.11 et seq. to include UGI's years of operation of an industrial site between 1899 through the early 1940's. Opposition was filed by third-party defendants UGI. No position was taken on this motion by plaintiff Fishbein Family Partnership. Oral argument was heard on October 11, 1994. Because the Court finds that PSE & G fails to assert an independent cause of action for contribution, its motion is denied.

## BACKGROUND

Plaintiff Fishbein Family Partnership ("Fishbein") filed its complaint against defendants PSE & G and PPG Industries ("PPG") in February of 1993. In this suit, plaintiff seeks, inter alia, to recover remediation costs from defendants resulting from the release or threatened release of hazardous substances on property in Jersey City which plaintiff owns ("the Site"). Plaintiff's claim against PSE & G is predicated upon its alleged ownership or operation of a manufactured gas plant on a portion of the Site from 1886 through 1954. Similarly, plaintiff's claim against PPG is based on PPG's alleged ownership or operation of a chromium or processing facility on the Site until 1963.

Three months after plaintiff's complaint was filed, PSE & G answered, cross-claimed and filed a third-party complaint against UGI. PSE & G's third-party complaint is for contribution and reimbursement under CERCLA and the Spill Act. Its claim is predicated on the lease and operation of a gas plant on the Site by UGI's predecessor, The United Gas Improvement Company ("TUGIC"), from 1886 until 1889.

In September 1993, UGI answered and counterclaimed. Through the pleadings, UGI raised the affirmative defense that PSE & G's predecessor, Hudson County Gas Company ("Hudson"), in a transaction occurring in 1899, released TUGIC, its successors and assigns from all liability relating to the operation of the manufactured gas plant on the Site for the period between 1886–1899. At initial pretrial scheduling conferences, UGI made clear that it intended to file a motion for summary judgment based on the release as soon as discovery on that issue was complete. Varon Decl. ¶ 4.

This Court's first pretrial scheduling order was filed September 15, 1993. The Order set October 25, 1993 as the deadline for amending the pleadings. A second pretrial order

---

1. This Opinion has been amended following PSE & G's motion for reconsideration of the Court's original Opinion. In a separate Opinion and Order signed on December 27, 1994, the Court granted PSE & G's motion for reconsideration in part for the limited purpose of amending its initial Opinion. PSE & G's motion for reconsideration was denied in all other respects.

was issued on November 8, 1993. This Order set deadlines for discovery on "preliminary issues" and permitted UGI to file for summary judgment. Extensions of the preliminary issue discovery were requested by PSE & G, based upon its counsel's representation that his search for documents relevant to the 1899 release was not complete. Therefore, discovery continued on this limited subject matter well into April of 1994.

In late March of 1994, PSE & G claims to have become aware of a Third Circuit reported opinion from 1942 which contained evidence establishing a post–1899 nexus between UGI and the gas manufacturing operations on the Site.[2] At that time, PSE & G requested supplemental discovery in order to further establish such a link. This Court denied PSE & G's request by a written order entered July 21, 1994.

In the meantime, UGI prepared a motion for summary judgment that was to be heard in October, 1994, and PSE & G retained new counsel to prosecute their third-party claims against UGI.[3]

On August 23, 1994 a status conference was held. At that conference, PSE & G requested leave to file an amended third-party complaint. The original pleading was based on Consumers Gas Company's lease of the manufactured gas plant to UGI for the period between 1886–1899. The amended third-party complaint alleges that UGI is liable to PSE & G for contribution and reimbursement based on the following set of alleged facts and circumstances: In 1899, Hudson County Gas Company ("Hudson") was formed through a merger with Consumers Gas Company and assumed control of the lease previously held by UGI. McPhee Aff. ¶ 6. From 1899 until 1903, UGI owned a majority of the authorized issued and outstanding common stock of Hudson. Am. Comp. ¶ 14. In 1903, Public Service Corporation of New Jersey ("PSC") acquired control of the manufactured gas plants by a lease from Hudson. McPhee Aff. ¶ 7. At that time UGI owned 25% of the original

common stock of PSC. In addition, the president of UGI was also the first Chairman of the Board of Directors of PSC, and the chief engineer of UGI became the first Superintendent of PSC's gas department. Am. Comp. ¶ 15. From 1903 until the early 1940's, UGI and/or its parent were the largest shareholder of common stock of PSC. Am. Comp. ¶ 15. In 1909, PSC assigned the lease held by Hudson to the Public Service Gas Company ("PSGC"), which was a subsidiary of PSC. In 1924, PSGC merged to form PSE & G. McPhee Aff. ¶ 7. In 1939, Hudson also merged into PSE & G. Am. Comp. ¶ 16.

Based upon the foregoing, PSE & G now seeks to expand its contribution claim against UGI on the theory that UGI, as a stockholder of PSC, was an owner or operator of the Site. The Court granted leave to PSE & G to file this motion to amend the complaint over UGI's objection that it was not timely.

## ARGUMENT

### I. Standard of Review

■ Pursuant to Fed.R.Civ.P. 15(a) the party wishing to amend a pleading must seek leave of the court to do so. Leave to amend a pleading "shall freely be granted when justice so requires." Fed.R.Civ.P. 15(a). Generally, the moving party ought to be afforded an opportunity to test its claim on the merits, if the underlying facts and circumstances may be a proper subject for relief. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The denial of a motion to amend is proper only when there is a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*

The discretion of the trial court "must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is

---

2. *Public Service Corporation of New Jersey v. Securities and Exchange Commission,* 129 F.2d 899 (3rd Cir.), *cert. denied,* 317 U.S. 691, 63 S.Ct. 266, 87 L.Ed. 553 (1942).

3. The firm of Pitney, Hardin, Kipp & Szuch entered its appearance as co-counsel for third party plaintiff on August 2, 1994.

the 'touchstone for the denial for leave to amend.'" *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990), *citing Cornell & Co., Inc. v. Occup. Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3rd Cir.1978). A court will find that prejudice is undue "when the opponent shows it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered." *Id.*

█ A court may deny a motion to amend based on undue delay when the movant is unable to "satisfactorily explain" the reasons for delay. *Leased Optical Departments v. Opti–Center, Inc.*, 120 F.R.D. 476, 478 (D.N.J.1988).

█ It is well recognized that futility is an appropriate ground for denying leave to amend a complaint. *Allied Erecting and Dismantling Co., Inc. v. United States Steel Corp.*, 786 F.Supp. 1223, 1227 (W.D.Pa.1992). However, it is improper to deny leave to amend if the proposed amendment is not clearly futile. *Harrison Beverage* at 468. "The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Parties are not required to engage in substantive motion practice to prove the futility of an amendment; however "[to] allow a meritless claim to proceed to the motion to dismiss and motion for summary judgment stages is an abdication of judicial responsibility that serves neither justice nor efficiency." *Allied Erecting* at 1227.

Rule 16(b) of the Federal Rules of Civil Procedure also impacts upon a court's decision to grant leave to amend. Rule 16(b), which was amended in 1983, requires that scheduling orders be issued for case management purposes. The rule demands a demonstration of "good cause" for extensions of deadlines. *Harrison Beverage* at 468.

█ UGI argues that the type of delay present in this case requires the standards of Rule 16(b) to control the Court's analysis rather than the more traditional standards of Rule 15(a). While this Court agrees that PSE & G has caused significant delay through numerous requested extensions of discovery, thereby protracting UGI's participation in this matter, the delay is distinguishable from the delay that existed in *Harrison Beverage.* In *Harrison Beverage,* the defendant brought a motion to amend only one and one-half weeks before the trial date. Furthermore, the amendment had been contemplated by the defendant for over fifteen months. The case, *sub judice,* is distinguishable primarily because neither a trial date nor a final pretrial conference date has been set. Thus, hearing PSE & G's motion does not disrupt any overall trial schedule set for this case. While the Court recognizes that this motion has delayed UGI's summary judgment motion, such delay is not equivalent to that found in *Harrison Beverage.*

In declining to decide this motion pursuant to the strict standards of Rule 16(b), this Court recognizes that UGI's ability to have its summary judgment motion heard has been impeded and that UGI has thereby been prejudiced. Such delay can properly be considered in the context of a traditional Rule 15(a) analysis. Thus, the Court will decide this motion pursuant to Rule 15(a) rather than addressing the good cause standard required by Rule 16(b).

█ The first factor which must be considered is whether the movant has engaged in undue delay. As stated above, this court recognizes that PSE & G has caused significant delay. This motion to amend was filed some nine months after the October 15, 1993 deadline set for motions to amend at the first pretrial conference. PSE & G fails to provide a satisfactory explanation for this delay. It was not until the third extension of discovery was expiring that PSE & G came forward with the results of its investigation of its own corporate history. PSE & G argues that it only recently discovered the connection between UGI and PSC, PSE & G's predecessor. This Court is not satisfied with PSE & G's reason for delay, because knowledge of its corporate history must be imputed to PSE & G. Furthermore, a great deal of PSE & G's information was derived from the reported decision of the Third Circuit in

*Public Service Corporation of New Jersey v. Securities and Exchange Commission,* 129 F.2d 899 (3d.Cir.), *cert. denied,* 317 U.S. 691, 63 S.Ct. 266, 87 L.Ed. 553 (1942). This decision was discoverable by PSE & G prior to March 1994 when counsel claims to have learned of it. Indeed, it strains credibility to suggest that PSE & G only recently learned of the identity of its stockholders.

Furthermore, the representations of PSE & G's prior counsel to this Court should be noted. PSE & G based its requests for discovery extensions on its need to complete document discovery pertaining to the 1899 release on which UGI intends to rely in its summary judgment motion. Counsel never intimated that PSE & G intended to assert a completely new (and novel) theory of liability. This Court did not intend to extend discovery to enable PSE & G to pursue a protracted investigation of its corporate history. In fact, this Court explicitly denied PSE & G's request for supplemental discovery on the issue of UGI's post–1899 nexus to the Site by Order entered July 21, 1994. For these reasons, the Court finds that PSE & G has caused undue delay without a satisfactory explanation.

█ While a motion to amend may be properly denied on this ground alone, the Court is hesitant to enter such an order based upon procedural misconduct where alternative sanctions, such as an award of counsel fees for UGI during the period of inordinate delay, could serve to assuage any prejudice caused by PSE & G. Therefore, the outcome of the motion must abide the analysis of its futility.[4]

█ A finding of futility requires a Fed. R.Civ.P. 12(b)(6) analysis. *Massarsky* at 125. In considering a motion to dismiss, a court must view all allegations in a light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A district court must accept as true the facts pleaded in the complaint and any and all reasonable inferences derived from those facts. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir. 1991).

## II. CERCLA

CERCLA, adopted by Congress in 1980, is a complex remedial statute enacted to enable the government to hold responsible parties liable for contributing to the costs of environmental clean-up. 42 U.S.C. § 9607; George J. Tyler and Patrick J. McNamara, *Superfund Amendments and Current Superfund and RCRA Activities, in Hazardous Waste in New Jersey,* 43, 47 (1991).

In 1986, CERCLA was amended by Congress through the Superfund Amendments and Reauthorization Act (SARA). Donald W. Stever, *Law of Chemical Regulation and Hazardous Waste* § 6.04[2]. The amendment, particularly § 9613, expanded the number of civil proceedings that could be brought under the Act. Pursuant to subsection (f), a responsible party may seek contribution from other potentially liable parties. The statute provides that:

> (f)(1) Contribution. Any person may seek contribution from any other person who is liable or potentially liable under section

---

4. While it may be argued that the denial of this motion would be tantamount to a dispositive order, it is to be noted that it is within the powers of the undersigned to decide because it arises from a motion to amend the pleadings. Local Rule 40A.1 implements the provisions of 28 U.S.C. § 636(b)(1) and delegates magistrate judges with broad authority to hear and decide all pretrial issues other than dispositive matters as designated in Local Rule 40A.2. "There is no doubt that in this district motions to amend are decided by the magistrate." *Jordan v. Tapper,* 143 F.R.D. 567, 571 (D.N.J.1992). *See also, Har-*

*ter v. GAF Corp.,* 150 F.R.D. 502 (D.N.J.1993) (Judge Lechner affirmed Magistrate Judge Cavanaugh's order which denied the appellant's motion to amend the complaint.)

Taking this argument to its logical conclusion, magistrate judges would be compelled to grant every motion to amend a pleading, since a denial could be characterized as "dispositive" of the issues raised, however futile, deficient or frivolous. Furthermore, the denial of the proposed amendment does not affect the claims raised by the existing third-party complaint.

9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines appropriate. 42 U.S.C. § 9613(f)(1).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) *et seq.* specifies from whom a party may seek contribution and provides in pertinent part that:

> (2) Any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for—(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

### a. "Owner" and "Operator" Status Under CERCLA

Recognizing the significant ramifications of CERCLA liability, courts have developed legal standards to determine whether a corporate entity, shareholder, officer or director of a corporation which operates a facility can be deemed an owner or operator. The Third Circuit recently established the parameters of liability in *Lansford–Coaldale Joint Water Authority v. Tonolli Corp.*, 4 F.3d 1209 (3rd Cir.1993), a CERCLA case brought by a property owner against the owner of an adjacent site. In *Lansford–Coaldale,* the plaintiff sought to fix CERCLA liability on the parent corporation of the site's title holder which had filed in bankruptcy. The Third Circuit held that separate analyses for "owner" and "operator" liability are necessary.

A corporation may be held liable as an owner for the actions of its subsidiary corporation in situations in which it is determined that piercing the corporate veil is warranted.... Operator liability, in contrast, is generally reserved for those situations in which a parent or sister corporation is deemed, due to the specifics of its relationship with its affiliated corporation, to have had substantial control over the facility in question. *Id.* at 1220.

And ultimately, "to be an operator requires more than merely complete ownership and the concomitant general authority or ability to control ... it requires active involvement in the activities of the subsidiary." *Id.* at 1222, *quoting United States v. Kayser–Roth Corp.,* 910 F.2d 24, 27 (1st Cir.1990), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991).

### i. Ownership Liability

■ PSE & G alleges in its third-party amended complaint that "UGI owned a majority of the authorized issued and outstanding common stock of Hudson, [PSE & G's predecessor,] and thereby exercised a controlling influence over the gas manufacturing operations of Hudson at the Site." Am. Comp. ¶ 14. PSE & G further alleges that UGI was "individually or jointly the single largest shareholder of the common stock of PSC" through the 1940's. Am. Comp. ¶ 15. Based on those alleged facts, PSE & G argues that UGI is liable for contribution under CERCLA as an "owner and operator". With regard to ownership liability, this is an untenable position because there is no doubt that TUGIC conveyed title to the Site in 1899 and that PSE & G's corporate predecessor became its owner. Further, there is no claim that UGI was ever the "parent" or "sister" corporation of PSE & G. UGI, as a shareholder, cannot be held liable as an owner because the property of a corporation is its own property, not that of its shareholders. *Analytic Measurements* at 296. Thus, unless PSE & G can justify the piercing of its *own* corporate veil, it cannot impose owner liability upon UGI under CERCLA. *Lansford–Coaldale* at 1224–25. PSE & G has not argued that piercing its corporate veil is justified, nor has it alleged that circumstances, such as fraud, injustice, self-dealing or unconscionable conduct, exist to justify such action by this Court. Consequently, a finding of ownership liability based on UGI's status as a shareholder is unwarranted.

Next, the fact that UGI and PSC may have shared a director does not present a ground

for piercing the corporate veil.[5] PSE & G has not alleged any misconduct or malfeasance of the director that would allow this Court to disregard the concepts of limited liability. Absent fraud, self-dealing or unconscionable conduct, the law will not impose liability on corporate fiduciaries, pursuant to the business judgment rule. *Analytical Measurements* at 299. *See also, Maul v. Kirkman*, 270 N.J.Super. 596, 637 A.2d 928, 937 (App.Div.1994); *Papalexiou v. Tower West Condominium*, 167 N.J.Super. 516, 401 A.2d 280, 285–86 (Ch.Div.1979).

Therefore, accepting as true the facts alleged by PSE & G, there is no valid basis for a finding of owner liability against UGI.

### ii. Operator Liability

■■■■ The theory of operator liability takes into account the broad remedial purpose of CERCLA by enabling parties to hold other responsible parties liable for contribution. Operator liability may exist when an affiliated corporation is found to have actual control over the facility in question. *Lansford–Coaldale* at 1221. A fact specific inquiry is required to determine whether a corporation exerts enough control over another to be given operator status under CERCLA. *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 408 (1st Cir.1993).

> The factors courts should consider focus on the extent of the corporation's involvement in the other corporations's day-to-day operations and its policy-making decisions.... We understand the actual control standard to hold accountable for environmental violations those corporations which are **not mere investors** in other corporations, but instead have actively and substantially participated in the corporation's management.... In other words, the test is concerned with control rather than ownership and there is no reason not to hold a corporation liable when it exercises substantial management control over an

affiliated corporation. *Lansford–Coaldale*, at 1222 (emphasis added).

■■■ PSE & G alleges no facts that suggest that UGI had actual control over PSC. PSE & G alleges that UGI owned 99.56% of Hudson stock from 1899–1903, when Hudson was in control of the leased site. Furthermore, PSE & G contends that UGI was a majority shareholder, at no time owning more than 28.4% of PSC stock,[6] and that the two corporations had common fiduciaries and employees from 1903–1940's. PSE & G bases its claim for operator liability on those alleged facts. In addition, however, PSE & G seemingly adopts the findings of the Security and Exchange Commission ("the Commission") that are reiterated by the Third Circuit in *Public Service Corporation of New Jersey v. Securities and Exchange Commission*. The Commission found that PSC failed to "establish by a preponderance of the evidence that it is not controlled or subject to a controlling influence by ... [UGI and United]." 129 F.2d 899, 902. The Commission merely found that if UGI and its parent corporation, United, acted together that they had the **potential** to control PSC by defeating resolutions or passing their own. The Commission did not find that UGI acting alone had **actual** control over PSC.

Taking all of PSE & G's allegations as true and fully considering the facts found regarding the relationship between UGI and PSC by the Commission as reported by the Third Circuit, this Court cannot conclude that UGI had substantial control over the policy making decisions or day-to-day operations of PSC. *See, Analytical Measurements, Inc. v. Keuffel & Esser Co.*, 816 F.Supp. 291, 296 (1993). Therefore, operator status cannot be found under any version of facts asserted by PSE & G.

Although the examination of operator status requires a fact intensive analysis, *Boyd*, 992 F.2d at 408, UGI's stock ownership can-

5. Third-party plaintiff specifically alleges that "the President of TUGIC was also—simultaneously—the first Chairman of the Board of PSC. The chief engineer of TUGIC became the first Superintendent of PSC's Gas Department." Am. Comp. ¶ 15.

6. Upon inspection of all papers submitted, this is the highest percentage of stock that UGI is alleged to have owned at any given time. This particular figure is drawn from *Public Service Corporation of New Jersey v. Securities and Exchange Commission*, 129 F.2d 899, 901 (3rd Cir. 1942).

not form the basis for an independent cause of action. However, this opinion does not address how UGI's continued presence by virtue of its stock ownership relates to the release it obtained in 1899. That issue is properly raised in the context of UGI's motion for summary judgment, which is soon to be filed.

### III. New Jersey Spill Act

The Spill Act was adopted in 1976, prior to its federal counterpart, CERCLA. It is New Jersey's analog to CERCLA. *Analytical Measurements* at 298. The Spill Act prohibits the discharge of hazardous substances, imposes a tax on transfers of such materials, creates a remediation fund and provides for the clean-up and remediation of spills. N.J.S.A. 58:10–23.11 *et seq.* The Spill Act, N.J.S.A. 58:10–23.11g(c), (d), provides in pertinent part:

> (c) Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred....
>
> (d) An act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge in any action arising under the provisions of this act.

Much of the law developed under the Spill Act is identical to that under CERCLA. *New Jersey v. Gloucester Environmental Management Services,* 821 F.Supp. 999, 1009 (1993). Essentially, this holds true for the analysis of owner and operator liability under the Spill Act.

In *State Department of Environmental Protection v. Ventron, Inc.,* 94 N.J. 473, 468 A.2d 150 (1983), the New Jersey Supreme Court held that under the Spill Act a parent corporation would be liable for the actions of its subsidiary when: (1) the parent was the sole shareholder of the subsidiary; (2) all of the members of the subsidiary's board of directors were employees of the parent; and (3) the parent's personnel, officers and directors were involved in the day-to-day operation of the subsidiary. *Id.* Furthermore, in

the *Department of Environmental Protection v. Arky's Auto.,* 224 N.J.Super. 200, 207, 539 A.2d 1280 (1988), the court held that in the absence of fraud or injustice, courts will not pierce the corporate veil to impose liability on a corporation's owners and officers.

New Jersey case law requires PSE & G to prove the same elements under the Spill Act as under CERCLA in order to impose liability on UGI. PSE & G does not allege sufficient facts to establish liability against UGI under the Spill Act. UGI cannot be found liable because PSE & G does not allege that UGI was the sole shareholder of PSC, that all of the employees of UGI were on the Board of Directors of PSC, or that UGI was in any way involved in the day-to-day operation of PSC. Furthermore, PSE & G does not offer circumstances that justify the piercing of its own corporate veil. Therefore, PSE & G has not stated a cause of action under the Spill Act against UGI through its proposed amended third-party complaint.

### Conclusion

Based on the foregoing, this Court finds that PSE & G's amended complaint is futile because the facts alleged within the four corners of the third-party complaint fail to state an independent cause of action upon which relief could be granted. Thus, this Court denies PSE & G's motion for leave to amend the third-party complaint.