224 N.J. Super. 200 (1988)
539 A.2d 1280
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
ARKY'S AUTO SALES, NORMAN ARKY, AND STANLEY R. ARKY, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS, AND FRANK DAIDONE, INDIVIDUALLY AND T/A GARDEN STATE STEEL DRUM CO., DEFENDANT, CROSS-RESPONDENT, AND THOMAS RICHARDS AND JOAN RICHARDS, INDIVIDUALLY AND T/A RICHARDS TRUCKING, AND RICHARDS TRUCKING INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1988.
Decided April 7, 1988.
*202 Before Judges FURMAN, LONG and SCALERA.
Benjamin Weiner argued the cause for appellants, cross-respondents (Weiner & Hendler, attorneys; Michael A. Zielinski on the brief).
Kenneth W. Elwell, Deputy Attorney General, argued the cause for respondent, cross-appellant (W. Cary Edwards, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; John A. Covino, Deputy Attorney General, on the brief).
No brief was filed on behalf of cross-respondent Frank Daidone, individually and t/a Garden State Steel Drum Co.
The opinion of the court was delivered by FURMAN, P.J.A.D.
*203 At issue on appeal and cross-appeal is liability for the costs of cleanup and removal of buried hazardous contaminants and pollutants on a 22-acre site in Marlboro Township, under the Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 et seq., the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., and common law strict liability and nuisance principles.
Defendants Arky's Auto Sales (Arky's), a corporation, and Norman and Stanley Arky, twin brothers individually, appeal from the provision of the judgment following a nonjury trial imposing liability against them under the Water Pollution Control Act. Plaintiff State Department of Environmental Protection (DEP) cross-appeals from the provision of the judgment, as amended, dismissing its claim against defendants Arky's, the individual Arkys and Frank Daidone for relief under the Spill Act. We reverse on the appeal and affirm in part and reverse in part on the cross-appeal.
The trial court's judgment did not rest upon or refer to common law strict liability or nuisance principles, notwithstanding its conclusion of their applicability in its oral opinion. Accordingly, we need not and do not pass on the issue of common law liability under either theory. We point out that here, unlike the factual circumstances in State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473 (1983), a common law right of action cannot be premised upon the State's ownership of nearby threatened property.
The relationship of the various defendants to the 22-acre site may be summarized briefly. The facts are largely uncontested. Arky's took title to the premises in 1971. Norman and Stanley were sole owners and principals of the corporation, which conducted a business elsewhere. The site was unimproved except for an auto wrecking yard or junkyard on about six acres. Arky's separately leased the six acres, first to Action Auto Wreckers and in March 1973 to defendants Richards. *204 Judgment of no cause for action in favor of defendants Richards has not been appealed from. During their tenancy, the Richards permitted defendant Daidone to bring full or partially full used steel drums to the leased premises in trailer trucks and to empty and store them there in the course of his business of buying such drums out of state and selling them, when empty, in New Jersey. Many of the drums were marked on the side with warning labels as poisonous or flammable. Some drums ruptured while being unloaded, and the contents spilled on the ground.
On April 23, 1973 a fire broke out at the auto wrecking yard. Several drums exploded. The fire was fought as a chemical fire and brought under control with foam as well as water. The municipal fire chief directed a cleanup of the site. The township engineer advised both Daidone and Stanley Arky that contaminated soil would have to be removed. About a week later, although he observed some progress towards cleanup the fire chief issued Municipal Court summonses against Arky's as owner, the Richards as lessee and Daidone for various fire and building code violations. The complaints were eventually administratively dismissed in June 1979.
On a visit to the site in late April 1973, the township engineer observed a large excavated area on the premises retained by Arky's outside the six-acre leased premises, partially filled with steel drums. Some of the drums were obviously ruptured and leaking. About a month later on another return to the premises, he witnessed Richards pushing drums into the same hole with an excavation machine; some drums were crushed in the process and spilling liquids. He issued a stop work order and advised both Daidone and Stanley Arky. About two truckloads of contaminated soil were removed from the area of the fire on the leased premises, where the drums were initially stored.
There was a hiatus in governmental investigative or enforcement activity directed towards Arky's property until 1981 when Monmouth County health officials and DEP reinspected the *205 area of the excavated hole, discovered buried drums upon digging random trenches and took test soil samples. The soil samples revealed dangerous contaminant and pollutant levels. Among the hazardous substances identified were benzene, chloroform, ethylbenzene, methylene, chloride, toluene, trichloroethene and trichloroethylene, heptachlor and aroclor. DEP filed this complaint in 1985.
Title to the entire property was deeded by Arky's to Norman and Stanley Arky individually in 1977 and by them back to Arky's in 1981, after they had learned of the reopened investigation into possible pollution of the site by hazardous substances, because of their apprehension that liability might be imposed upon the record owners of the premises. In deciding the issue of liability against the individual Arky brothers, the trial judge pierced the corporate veil, based upon his fact findings as follows:
Arky's Auto Sales has always been a convenient shell for the Arkys. It serves no legitimate corporate purpose, and if there is any liability present attributable to the owner of the site it makes no difference whether the owner is Arky's Auto Sales or Norman and Stanley Arky. They are indeed Arky Auto Sales and must stand personal responsibility.
So far as the record shows, Arky's owns no property other than the subject 22-acre tract; the extent of its business operations, if any, is not clear.
DEP's action against the various defendants is based upon what it contends to have been illegal discharges of hazardous substances in the excavation on the premises retained by Arky's, not upon any spillage at the site of the fire on the premises leased by Arky's to the Richards. Defendant Daidone has not appealed from judgment imposing liability against him under the Water Pollution Control Act.
As for the liability of Arky's, we disagree with the trial judge's construction that the Water Pollution Control Act applied and the Spill Act did not. Liability under the former act, which was enacted as L. 1977, c. 74, is limited to violators who have discharged a pollutant into waters of the State or *206 onto land from which it might flow or drain into such waters. Discharge is defined as "releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping." The Englishtown aquifer underlies the subject premises. There is no dispute that a pollutant discharged into the soil or subsoil "might" leach or otherwise drain into that underground water resource. Nevertheless, also indisputably, Arky's, acting through the brothers as its officers and agents, did not itself bury steel drums filled with pollutants and subject to leakage. Although title owner of the premises Arky's did not itself participate in any act of illegal discharge as defined in the Water Pollution Control Act.
The scope of liability under the Spill Act, which was enacted as L. 1976, c. 141, is broader. The definition of discharge of hazardous substances extends to unintentional acts or omissions. Strict liability for cleanup and removal costs is imposed under N.J.S.A. 58:10-23.11g(c), not only narrowly upon the discharger of a hazardous substance but upon any person "in any way responsible for any hazardous substance" which DEP has removed or is arranging to remove. Further, liability may be retrospectively imposed for the costs of cleanup and removal of a discharge prior to the effective date of the Spill Act, such as the occurrence here in 1973: burial of steel drums containing hazardous substances, many damaged and leaking, on Arky's premises.[1]
Spill Act liability of Arky's is premised upon its ownership of the unleased portion of the 22-acre tract, where the hole was excavated and the steel drums buried, and upon the surrounding circumstances, including its principals' awareness that used steel drums with poisonous and flammable contents were scattered about the adjoining leased premises, many leaking; *207 that, because of that problem, various Municipal Court charges had been filed against it; and that the township engineer had directed the removal of contaminated soil. Despite its knowledge and forewarning of an incipient pollution problem, Arky's did nothing, either by way of supervision or of inquiry into the measures taken for cleanup and removal, if any. Cf. Tree Realty, Inc. v. Department of Treasury, 205 N.J. Super. 346 (App.Div. 1985), recognizing Spill Act liability of an owner which leased its property for a solid waste facility.
As for the individual Arky brothers' liability under the Spill Act or otherwise, we disagree with the trial judge's conclusion that, on the substantially undisputed facts, Arky's was a mere "shell" and, thus, its owners and officers should not be shielded under limited liability principles. As DEP's attorney conceded at oral argument, during the relevant events of 1973 the Arky brothers were acting for the corporation, not for themselves individually. There is insufficient credible evidence in the record to support the determination below that Arky's corporate veil should be pierced. See Lyon v. Barrett, 89 N.J. 294, 300 (1982): "In the absence of fraud or injustice, courts generally will not pierce the corporate veil to impose liability on the corporate principals."
Nor is there a factual basis in the record to impose liability for discharges against the Arky brothers during the four-year period of their individual ownership from 1977 to 1981. Speculatively, buried drums may have leaked hazardous substances during that period but there is no such factual record. The circumstances are unlike those in Township of South Orange Village v. Hunt, 210 N.J. Super. 407 (App.Div. 1986), where there was evidence of continuing leakage of gasoline from an underground storage tank or tanks. In Atlantic City Mun. Utilities Authority v. Hunt, 210 N.J. Super. 76, 98 (App.Div. 1986), we recognized that "continuing contamination from an old spill is not a present discharge." See also Ventron, supra, 94 N.J. at 493, exempting subsequent *208 owners from liability for cleanup of mercury contamination, notwithstanding their "minimal aggravation of the underlying hazardous condition."
On the appeal we reverse the judgment imposing Water Pollution Control Act liability against defendants Arky's and Norman and Stanley Arky. The judgment imposing Water Pollution Control Act liability against defendant Daidone was not appealed from and remains in effect. On the cross-appeal we affirm the judgment dismissing the Spill Act cause of action against defendants Norman and Stanley Arky, and we reverse the judgment dismissing the Spill Act cause of action against defendants Arky's and Daidone.
We remand for entry of judgment in accordance herewith, including provisions that DEP should conduct tests and surveys to determine the extent of contamination and the scope of the required cleanup and make a report to the trial court of its findings and its proposed method of cleanup; and that the trial court should then determine whether to grant approval of the proposed method of cleanup and, if it does grant approval, following completion of the work should enter money judgments for all cleanup and renewal costs, upon notice to defendants Arky's and Daidone.
NOTES
[1] Arky's does not challenge the retrospective application of the Spill Act on constitutional grounds. That issue was resolved in favor of constitutionality in State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473 (1983).