**PORTSMOUTH REDEVELOPMENT AND HOUSING AUTHORITY, a political subdivision of the Commonwealth of Virginia and Commonwealth Gas Services, Inc., Plaintiffs,**

v.

**BMI APARTMENTS ASSOCIATES, a Virginia general partnership et al., Defendants.**

Civ. A. No. 2:93CV242.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 21, 1993.

Ralph Walling Buxton, Susan Taylor Hansen, Cooper, Spong & Davis, Portsmouth, VA, James Edward Anklam, John W. Edwards, George Van Cleve, Jones, Day, Reavis and Pogue, Washington, DC, Andrew J. Sonderman, John L. Shailer, Columbus, OH, for Portsmouth Redevelopment.

Ralph Walling Buxton, Susan Taylor Hansen, Cooper, Spong & Davis, Portsmouth, VA, James Edward Anklam, Jones, Day, Reavis and Pogue, Washington, DC, for Commonwealth Gas.

Bradfute Warwick Davenport, Jr., James Edward Ryan, Jr., Alan Dale Abert, Mays & Valentine, Richmond, VA, for BMI Apts., Berlin–Miles–Richels, Inc., B.L. Richards, E.C. Handley, Arnold Amdursky, H.G. Berlin, L.B. Taylor, E. Ransdell, III, S. Schreier, N. Schreier, J. Pitler, R.G. Richels, Morris Richels, B. Kolish, H.D. Embree, M.D. Embree, R.L. King, H.E. Gordon, C.O. Pariser, R.J. Berlin.

Thomas Rollins Watkins, Nanci Snow Bockelie, Patten, Wornom & Watkins, Newport News, VA, for Martin and Rose Shebar, Irvin Cohen, Eleanor Cohen, Sidney Coren, Shirley Coren, J. Garner, B. Kramer.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

This case is presently before the court on the motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and (b)(6) filed by defendants Irvin H. Cohen, Sidney W. Coren and H. Lee Kanter (collectively the "Prior Owner Defendants"), and the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by defendants Rose Shebar, Bette O. Kanter (now Bette Kramer), Eleanor Cohen and Shirley F. Coren (collectively the "Prior Owner Wives"). The Prior Owner Defendants have moved to dismiss on the grounds that: (1) the court lacks subject matter jurisdiction because the hazardous compounds found in the subsoils at the Site are excluded from the coverage of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA") by the so-called "petroleum exclusion," *see* 42 U.S.C. § 9601(14); and (2) they are not potentially responsible parties ("PRP's") under CERCLA because they did not own or operate the property at the time of disposal of any hazardous substances. The Prior Owner Wives have moved to dismiss on the ground that they were never owners or operators of the property and hence cannot be held liable under CERCLA.

## FACTS

This is a private cost recovery action brought under CERCLA seeking a declaration of the respective liabilities of the defendants for alleged hazardous waste contamination of a tract of land in Portsmouth, Virginia known as the Patio Plaza Apartments (the "Site"). Defendant, BMI Apartments Associates (the "BMI Partnership"), has owned the Site, which consists of approximately two (2) acres located at 301 Effingham Street in the City of Portsmouth, since April 1985.

Plaintiff, Commonwealth Gas Services, Inc. ("Commonwealth Gas"), was formed in 1977 by the merger of Commonwealth Natural Resources, Inc. ("CNR") and the Portsmouth Gas Company ("Portsmouth Gas"). Beginning in 1854, and for approximately one hundred years thereafter, Portsmouth Gas owned the Site and operated a "town gas plant" there for the purpose of producing gas from coal for street lighting and other uses.

On March 3, 1961, before its merger with CNR, Portsmouth Gas sold the Site to the Portsmouth Redevelopment and Housing Authority (the "Authority"). The Authority is a political subdivision of the Commonwealth of Virginia which assists in providing housing through a federally-subsidized rental assistance program utilized by some tenants at the Patio Plaza Apartments. On March 15, 1963, the Authority sold the Site to the Prior Owner Defendants pursuant to the City of Portsmouth's urban redevelopment plan. By the end of 1963, an apartment complex had been built on the Site pursuant to a previously-approved plan of redevelopment for the area. The Prior Owner Defendants owned and operated the apartment complex until 1966. From then until April 1985, the apartment complex was owned and operated by entities which are not parties to this action. The BMI Partnership bought the apartment complex in April 1985 and has owned it since then.

The complaint alleges that in early 1993 Commonwealth Gas received a report from the BMI Partnership stating that there may have occurred releases of petroleum hydrocarbons at the Site "at an indeterminate time

in the past." Commonwealth Gas allegedly reported this information to the responsible federal authorities and attempted to reach an agreement with the BMI Partnership for undertaking studies to determine the nature and extent of the contamination at the Site.[1] The BMI Partnership insisted that Commonwealth Gas purchase the Site from it, and indemnify it for all costs incurred in any remedial action. This declaratory judgment action followed those demands.

## DISCUSSION

The motion to dismiss filed by the Prior Owner Defendants calls for a decision on the pleadings alone. However, the motion to dismiss filed by the Prior Owner Wives goes beyond the pleadings, and must be treated as a motion for summary judgment. *See* Fed. R.Civ.P. 12(b). Each motion is discussed in turn.

A. *The Prior Owner Defendants' Motion Under Fed.R.Civ.P. 12(b)(1).*

■ The Prior Owner Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that the court lacks subject matter jurisdiction over this dispute because the complaint alleges that the Site is contaminated by petroleum hydrocarbons (*see* Complaint at ¶ 42), which are specifically excluded from the coverage of CERCLA by Section 101(14) (42 U.S.C. § 9601(14)) of that statute. That section, the so-called "petroleum exclusion", excludes from the coverage of CERCLA "petroleum, including crude oil or any fraction thereof ... natural gas liquids, liquified natural gas or synthetic gas usable for fuel...." *See* 42 U.S.C. § 9601(14). The Prior Owner Defendants assert that since "[p]laintiffs themselves characterize the materials found [at the Site] as 'petroleum hydrocarbons' ... CERCLA ... provides no cause of action in this case."

When confronted with a challenge to subject matter jurisdiction presented in a motion to dismiss under Fed.R.Civ.P. 12(b)(1), the court should consider "whether plaintiff's allegations, standing alone and taken as true [plead] jurisdiction and a meritorious cause

of action." *Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir.1984) (citing *George v. Kay,* 632 F.2d 1103 (4th Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981)). Once the existence of subject matter jurisdiction is challenged, the burden of establishing its existence always rests upon the party asserting jurisdiction. *See* 2A *Moore's Federal Practice* ¶ 12.07[2.–1], p. 12–46 (1993). However, "the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action." *Id.*

The petroleum exclusion has been uniformly interpreted by the courts as excluding from the coverage of CERCLA "those otherwise hazardous substances which are inherent in petroleum...." *See Niecko v. Emro Marketing Co.,* 769 F.Supp. 973, 981 (E.D.Mich.1991) (citing *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.,* 881 F.2d 801, 805 (9th Cir.1989); *United States v. Western Processing Co., Inc.,* 761 F.Supp. 713 (W.D.Wash.1991); *United States v. Alcan Aluminum Corp.,* 755 F.Supp. 531, 539 (N.D.N.Y.1991), *aff'd in part, rev'd in part,* 990 F.2d 711 (2d Cir.1993); *New York v. Exxon Corp.,* 744 F.Supp. 474, 489–490 (S.D.N.Y.1990); *Washington v. Time Oil Co.,* 687 F.Supp. 529, 531–532 (W.D.Wash.1988)), *aff'd,* 973 F.2d 1296 (6th Cir.1992). However, as plaintiffs correctly point out, courts refuse to apply the petroleum exclusion if the contaminants appear at the Site "in excess of the amounts that would have occurred in petroleum during the oil refining process." *See, e.g., Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377, 1384 (E.D.Cal.1991); *Washington v. Time Oil Co.,* 687 F.Supp. 529, 532 (W.D.Wash.1988).

This view is consistent with the position adopted by the Environmental Protection Agency ("EPA") in a Memorandum from the General Counsel of EPA to the Agency's Assistant Administrator For Solid Waste and Emergency Response, dated July 31, 1987 (the "EPA Memo"):

---

1. Pursuant to an Order entered by the Magistrate Judge on May 27, 1993, the parties were directed to submit to the court by June 14, 1993, an agreed plan for an inspection of the Site.

[W]e believe that our current interpretation, under which "petroleum" includes hazardous substances normally found in refined petroleum but *does not include either hazardous substances found at levels which exceed those normally found in such fractions* or substances not normally found in such fractions, is most consistent with the statute and the relevant legislative history....

\* \* \* \* \* \*

[H]azardous substances which are added to petroleum or which increase in concentration solely as a result of contamination of the petroleum during use are *not* part of the "petroleum" and thus are not excluded from CERCLA under the exclusion.

*Id.* at p. 5 (emphasis added). This interpretation, although not dispositive, is entitled to a measure of judicial deference. *INS v. Cardoza–Fonesca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) ("Courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering [a] statutory program.")

Considering the allegations of the complaint, taking into account that the petroleum exclusion itself presents a uniquely fact dependent question and mindful that other pleadings in the record assert that the contaminants at the Site are not limited to petroleum hydrocarbons, the court finds that plaintiffs have for now met their burden, especially since the Prior Owner Defendants have elected to base their jurisdictional challenge on the allegations of the complaint and have presented no evidence in support of their theory that the claim is barred by the petroleum exclusion. It is not possible to determine on this record whether the "petroleum hydrocarbons" alleged to be present at the Site are present at levels which would bring them within the scope of CERCLA's petroleum exclusion. Hence, it cannot now be said, as a matter of law, that the contaminants at issue fall within the petroleum exclusion. The Prior Owner Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(1) is therefore denied without prejudice to renewing it or to raising the issue as a motion for summary judgment under Fed.R.Civ.P. 56 if, after appropriate discovery, the facts so warrant.

Plaintiffs, who themselves owned the Site for years and who, therefore, should have extensive information about the nature of any contamination present there, are admonished that the court expects clarification of the facts applicable to the petroleum exclusion issue with the least possible expenditure of funds by the parties and the least possible commitment of judicial resources.

**B. *The Prior Owner Defendants' Motion Under Fed.R.Civ.P. 12(b)(6).***

■ The Prior Owner Defendants have also moved to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) on the ground that the complaint "alleges no 'disposal' of hazardous substances within the meaning of CERCLA during [their] ownership or operation of the Site." They assert that the undisputed fact that they "moved some dirt around in the course of constructing the apartment buildings now on Site" does not constitute "disposal" as that term is defined in CERCLA, and that therefore they cannot be liable under 42 U.S.C. § 9607(a).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must ascertain whether the factual allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, "constitute 'a short and plain statement' of the claim showing that the pleader is entitled to relief." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). In reviewing the sufficiency of the complaint, the court is mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

' Section 9601(29) of CERCLA defines the term "disposal." It incorporates by reference the statutory definition of disposal found in the Resource Conservation and Recovery Act, 42 U.S.C. § 6901; *et seq.* ("RCRA"), which provides:

The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

See 42 U.S.C. § 6903(3). The United States Court of Appeals for the Fourth Circuit interpreted the term "disposal" as defined by RCRA in *United States v. Waste Industries, Inc.*, 734 F.2d 159 (4th Cir.1984), and accorded it an expansive interpretation. The Court of Appeals held that:

The inclusion of "leaking" as one of the diverse definitional components of "disposal" demonstrates that Congress intended "disposal" to have a range of meanings, including conduct, a physical state, and an occurrence. Discharging, dumping, and injection (conduct), hazardous waste reposing (a physical state) *and movement of the waste after it has been placed in a state of repose (an occurrence) are all encompassed in the broad definition of disposal.*

*Id.* at 164 (emphasis added). *Accord Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir.1988) (disposals may occur "when hazardous materials are moved, dispersed, or released during landfill excavation and fillings").

In CERCLA cases, this court is obligated to apply the definition of disposal adopted by the Court of Appeals in *Waste Industries*. *See Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 845 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992). In light of the decisions in *Waste Industries* and *Nurad*, the court finds that the allegations of the complaint are legally sufficient, albeit marginally, to survive dismissal as a matter of law because the plaintiffs may be able to establish that the construction activity alleged so generally in the complaint falls within the applicable definition of disposal. Accordingly, the Prior Owner Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will be denied without prejudice to presentation of the issue at a later date on a motion for summary judgment under Fed.R.Civ.P. 56, if warranted by the factual record.

## C. *The Prior Owner Wives' Motion to Dismiss*

■ The Prior Owner Wives have moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) on the ground that they were never owners or operators of the Site and therefore are not potentially responsible parties under CERCLA. The motions rely on matters outside the pleadings; hence, the motion to dismiss must be treated as a motion for summary judgment. *See* Fed. R.Civ.P. 12(b).

The Prior Owner Wives state that they "have never owned or operated the Site, have never disposed of or transported any hazardous substances to the Site, [and] have never had any involvement in the Site." In support of their motion, the Prior Owner Wives have attached a deed which shows that the Authority transferred the property comprising the Site to Martin Shebar, Irvin H. Cohen, Sidney W. Coren, Joseph J. Garner and H. Lee Kanter. The same document also establishes that the property was not transferred to the Prior Owner Wives. (*See* Exhibit 1 to Memorandum of Law in Support of Motion to Dismiss by Prior Owner Defendants and their Wives). The partnership agreement by which the Prior Owner Defendants agreed to develop the property shows prima facie that the Prior Owner Wives were not involved in the partnership. (*Id.*, Exhibit 2). In opposition to the motion, as evidence that the Prior Owner Wives possessed an interest in the property, plaintiffs point to a deed of trust on the property which was signed by the Prior Owner Defendants and by the Prior Owner Wives. (*See* exhibit B to Plaintiff's Memorandum In Opposition To Motion To Dismiss By Prior Owner Defendants).

Based on the court's review of these documents, it appears that plaintiffs have established only that the Prior Owner Wives possessed dower rights to the property, which they relinquished by executing the instrument securing the loan to the partnership. These dower rights would not make the Prior Owner Wives "owners" under CERCLA. Under Virginia law, a wife's right of dower is

"merely inchoate;" this right is "consummated and raised to the dignity of an estate in land by the death of the husband." *See, e.g., Turner v. Turner*, 185 Va. 505, 39 S.E.2d 299, 302 (1946).

The inquiry, however, does not end there. There remains the question whether the Prior Owner Wives were "operators," as that term is defined by CERCLA, and as plaintiffs appear to allege in their ambiguously worded complaint. As explained by the United States Court of Appeals for the Fourth Circuit in *Nurad, Inc. v. William E. Hooper & Sons Co.*, to qualify as an "operator" under CERCLA the "defendants need not have exercised actual control . . . , so long as the authority to control the facility was present." 966 F.2d at 842. Although it is not dispositive, the partnership agreement is strong and substantial evidence that the Prior Owner Wives lacked any authority to control activities at the Site.

Plaintiffs have not rebutted the showing made by the Prior Owner Wives nor have plaintiffs shown, as required by Fed.R.Civ.P. 56(f), that they need additional discovery to respond to the documentary submissions on which the Prior Owner Wives rest their motion. However, in the interest of justice and judicial economy, the court will defer entry of a decision on the motion filed by the Prior Owner Wives to afford plaintiffs time to clarify their pleadings respecting the bases for their claims against those defendants. Accordingly, within twelve days of the date this Memorandum Opinion and Order is entered, plaintiffs shall file any additional materials showing the Prior Owner Wives to be "owners" and a statement, with supporting documentation, whether they genuinely contend that the Prior Owner Wives are liable as "operators" within the meaning of CERCLA. If plaintiffs fail to submit further materials respecting the issue of "owner" status or make a supported assertion that the Prior Owner Wives are "operators," the motion of the Prior Owner Wives will be granted without further proceedings.

## CONCLUSION

For the foregoing reasons, the Prior Owner Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) are denied without prejudice, and the motion to dismiss filed by the Prior Owner Wives pursuant to Fed.R.Civ.P. 12(b)(6), which the court construes as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, will be granted unless within twelve days from the entry of this Memorandum Opinion and Order the plaintiffs show that a genuine issue of material fact exists whether the Prior Owner Wives were owners or operators of the Site.

It is so ORDERED.