UNITED STATES of America, Plaintiff,

v.

CDMG REALTY COMPANY,
et al., Defendants.

STATE OF NEW JERSEY, DEPART-
MENT OF ENVIRONMENTAL
PROTECTION, Plaintiff,

v.

CIBA–GEIGY CORPORATION,
et al., Defendants.

BEAZER MATERIALS AND SERVICES,
INC., et al., Third–Party Plaintiffs,

v.

ADRON, INC., et al., Third–
Party Defendants.

HMAT ASSOCIATES, INC.,
Third–Party Plaintiff,

v.

DOWEL ASSOCIATES, a general partnership; Herbert M. Iris, individually and as a general partner in Dowel Associates; and Lester Z. Lieberman, individually and as a general partner in Dowel Associates; Third–Party Defendants.

Civ. A. No. 89–4246 (NHP).

United States District Court,
D. New Jersey.

Jan. 23, 1995.

Steven T. Singer, Schwartz, Tobia & Stanziale, Montclair, NJ, for B. Horstmann Septic Tank Service.

Richard Pisacane, Pisacane, Anderson & Cahill, Wayne, NJ, for Marangi Sanitation, Inc.

John A. Gonnella, Caldwell, NJ, for Tri-County Disposal Service, Inc.

George O. Foster, Foster & Mazzie, Totowa, NJ.

Robert J. Rohrberger, Fox & Fox, Newark, NJ.

Carl R. Woodward, III, Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, Roseland, NJ.

James McKenna, Morristown, NJ.

Marc J. Friedman, Rich & Friedman, Parsippany, NJ, for Policastro Service, Inc.

Richard N. Cignarella, West Orange, NJ, for Pontie Disposal Co.

Richard Picini, Picillo, Caruso, P.C., Fairfield, NJ, for Basic, Inc.

William J. Maione, Cedar Grove, NJ, for Intern. Engraving Corp.

Marla B. Rubin, Holtzman, Wise & Shepard, New York City, for Intern. Paper Co.

Howard C. Trueger, Parsippany, NJ, for Frank M. Bace Disposal, Inc.

Donald W. Stever, Dewey Ballentine, New York City.

David Lawrence, Durkin & Durkin, Newark, NJ.

### LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge.

Martin Siegal and Beth D. Pollack, Farer, Siegal, Fersko, P.A., Westfield, NJ, for defendants Dowell Associates, Herbert M. Iris and Lester Z. Lieberman.

William G. Harris and Hugh B. McCluskey, Parsippany, NJ, for defendant third party plaintiff HMAT Associates, Inc.

This matter comes before the Court on cross-motions for summary judgment by Dowel Associates, Herbert M. Iris, and Lester Z. Lieberman ("Dowel"), and by HMAT Associates, Inc. ("HMAT").[1] The subject of the instant cross-motions is a ten-acre plot of land on Edwards Road in Parsippany–Troy Hills Township, known as Block 768, Lots 2

1. On May 9, 1994, the Court heard oral argument on these cross-motions. At that time, the Court ordered that additional discovery be taken by the parties. On July 22, 1994, the Court ordered the parties' motions withdrawn without prejudice subject to later renewal. These renewed motions were argued before the Court on October 24, 1994.

and 3 ("the Property"). The Property was once part of the Sharkey's Farm Landfill ("Sharkey Landfill"), a site suspected of containing hazardous substances and the subject of the larger above-titled matter. The Sharkey Landfill closed in 1972. Dowel acquired the Property as an undeveloped tract of land on December 17, 1981.

The Sharkey Landfill became a Superfund site in or around December of 1982. As of November, 1983, at the latest, Dowel was aware that the Property was part of the Sharkey Landfill Superfund site. *See* Letter from Herbert M. Iris to Kevin F. Kratina, dated August 28, 1986. The Property remained vacant during Dowel's term of ownership, and was not actively used in any manner during Dowel's tenure. However, Dowel did commission a Preliminary Soils and Foundation Investigation in 1981 in connection with a proposed building site on the Property. That investigation involved at least eight borings and uncovered no obvious contamination on the Property.

In 1987, Dowel sold the Property to HMAT, fully disclosing to the purchaser the fact that the Property was part of the Sharkey Landfill, and thus part of a Superfund site. In October, 1989, both the federal and state authorities commenced actions against all parties potentially culpable for reimbursement of the costs of cleaning up the contamination on the Superfund site, and also seeking a declaration of future liability. HMAT was among the named defendants; Dowel was not.

HMAT filed a third-party suit against Dowel, seeking contribution pursuant to §§ 107(a)(2) and 113(f) of CERCLA[2], as well as asserting state law claims. These latter claims involve causes of action under the Environmental Rights Act[3], the Spill Compensation and Control Act[4], the Water Pollution Control Act[5], and the Solid Waste Management Act[6].

## DISCUSSION
### Summary judgment standard

Under Fed.R.Civ.P. 56, summary judgment may only be granted if, drawing all inferences in favor of the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," *id.* at 324, 106 S.Ct. at 2553, or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of material fact.

Moreover, the mere existence of an alleged factual dispute will not defeat an otherwise properly supported summary judgment motion; rather, the nonmoving party must show a genuine issue of material fact to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., supra*, 475 U.S. at 587, 106 S.Ct. at 1356 ("Where the record taken as a whole could not lead the trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "). Facts are material only if they have the potential to affect the outcome of the lawsuit under the applicable law, and a dispute over

**2.** Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607 *et seq.*

**3.** N.J.S.A. 2A:35A–1 *et seq.*

**4.** N.J.S.A. 58:10–23.11 *et seq.*

**5.** N.J.S.A. 58:10A–3(e) *et seq.*

**6.** N.J.S.A. 13:1E–1 *et seq.*

material facts is genuine only if the evidence on the issue is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10; *EEOC v. Westinghouse Elec. Corp.,* 725 F.2d 211, 218 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Thus, the non-movant's claims must be viewed in a favorable light by the court in a summary judgment context; however, the court must also be realistic in analyzing the potential for success of the non-movant's claims.

**CERCLA claim**

· Section 107(a)(2) of CERCLA provides that

> any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... [cleanup costs].

42 U.S.C. § 9607(a)(2).

CERCLA borrows its definition of "disposal" from another section of the Code:

> The term "disposal" [as used in CERCLA] means the discharge, deposit, injection, dumping, spilling, leaking, or placing of. any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3), as adopted by 42 U.S.C. § 9601(29).

■ There is some difference of opinion between the Circuits as to the scope of this definition of the term "disposal." The courts of this Circuit have not squarely addressed the issue in the context of CERCLA but, in 1981, Judge Brotman concluded that the term as employed by the Resource Conservation and Recovery Act ("RCRA"), that section of the Code from which CERCLA borrows the definition, should be quite broadly applied.[7] *United States v. Price,* 523 F.Supp. 1055, 1071 (D.N.J.1981), *aff'd,* 688 F.2d 204 (3d Cir.1982). *Price* stands for the proposition that "disposal," because its scope encompasses "leaking"—"which ordinarily occurs not through affirmative action but as a result of inaction or negligent inaction[ ]"—may include passive inaction within its RCRA definition. *Id.* HMAT has placed strong emphasis on *Price* because of the fact that CERCLA borrows its definition of "disposal" directly from RCRA.

A recent Third Circuit case involving CERCLA liability in the context of operator as opposed to owner liability, however, casts doubt upon the issue of whether the scope of "disposal" under CERCLA is as broad as that recognized under RCRA. In addressing claims for contribution under CERCLA, *Witco Corp. v. Beekhuis,* 38 F.3d 682 (3d Cir. 1994), observed that

> [CERCLA] delineates four classes of responsible parties upon whom liability is imposed: (1) the current owners or operators of a contaminated property, (2) owners or operators of the property at the time of hazardous waste disposal, (3) persons who arrange for disposal or treatment of hazardous substances at the property, and (4) persons who accepted hazardous substances for transport to the property.

*Id.* at 689 (citing 42 U.S.C. § 9607(a)).

The Third Circuit, in the second of these categories, recognized a temporal dimension

---

7. A recent bankruptcy case from the Eastern District of Pennsylvania addressed, in *dictum,* the issue of "passive disposal" in the CERCLA context. *Reading Co. v. City of Philadelphia,* 155 B.R. 890 (E.D.Pa.1993) involved a party with an *ownership interest in certain railcars which leaked PCBs*—thus leaked hazardous wastes—and sought exoneration from CERCLA liability on the premise that only passive disposal occurred on its watch. *Id.* at 897–98. The *Reading* court concluded its discussion of CERCLA disposal cases as follows:

> Clearly, as the above discussion of the relevant cases illustrates, passive disposal, a concept utilized by some courts to shield owners and operators who become involved with a facility after the disposal of hazardous waste occurred, refers to the leaking or migration of hazardous substances into the soil or water following their initial disposal. This case involves the initial disposal itself.

*Id.* (citations omitted).

*Reading,* to the extent that it acknowledges the difference between initial disposal and mere ownership of property after the disposal has ended, is instructive. A review of the cases cited therein is unnecessary at this point, however, since this Court shall engage in independent review of those cases.

to the word "disposal." By so doing, in this Court's view, it suggested an active component to the term. However, in deference to Judge Brotman's construction of the word in *Price*, and in recognition of HMAT's insistence that "disposal" need not have any active component for liability to ensue, this Court must examine the manner in which CERCLA's "disposal" has been defined in our sister Circuits.

A 1992 case from the Northern District of Illinois set forth a clear discussion of the meaning of "disposal" in the CERCLA context. *U.S. v. Petersen Sand and Gravel, Inc.*, 806 F.Supp. 1346 (N.D.Ill.1992) involved a recovery suit by the government against the operator of a contaminated site in which the defendant operator filed third-party contribution claims against seven other entities also allegedly responsible for the pollution. The United States adopted, *inter alia*, a theory of liability against defendant Petersen premised on the fact that defendant was an operator of the site "while passive disposal— *i.e.*, leaking and leaching of hazardous substances—occurred." *Id.* at 1350. The issue before the court therefore became whether leaking and leaching constituted "disposal." The *Petersen* court lacked sufficient precedent from its own court of appeals on which to base its conclusions, and had to engage in a search for instructive case law beyond the Seventh Circuit.[8] *Id.*

The *Petersen* court acknowledged the RCRA definition of "disposal" as adopted by CERCLA and noted that some courts have construed the term as requiring an actor— thus an active concept—while others have construed the constituent terms of "leaking" or "spilling" as having a passive component. *Id.* at 1351. The *Petersen* court was unpersuaded by either approach; instead it looked not only at the definition of "disposal" as adopted by CERCLA but compared that definition to the definition of "release" under CERCLA. *Id.*

CERCLA defines "release" as:

[A]ny spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

42 U.S.C. § 9601(22); *see also Petersen*, 806 F.Supp. at 1351. The *Petersen* court, based upon an analysis of these two terms, determined that "release" contemplates and encompasses "disposal," but not vice versa. *Id.* Congress has preconditioned the CERCLA response scheme on the occurrence of a "release," while the more specific determination of owner/operator liability is centered on "disposal." 42 U.S.C. § 9604(a)(1)(A). Only those owners/operators during whose watch "disposal" took place suffer CERCLA liability, while a "release" during an owner's tenure does not, by itself, confer liability. *Petersen*, 806 F.Supp. at 1351. The *Petersen* court buttressed its position by reference to CERCLA's innocent owner defense. *Id.*[9]

---

8. *Petersen* was, however, guided by the philosophy of the Seventh Circuit in its attempts to construe CERCLA, and its explication of the function of courts in that endeavor:

"We are enforcing a statute rather than modifying rules of common law.... To the point that courts could achieve 'more' of the legislative objectives by adding to the lists of those responsible, it is enough to respond that statutes have not only ends but also limits. Born of compromise, laws such as CERCLA and SARA do not pursue their ends to their logical limits. A court's job is to find and enforce stopping points no less than to implement other legislative choices."

*Id.* at 1350–51 (quoting *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155, 157 (7th Cir.1988)).

9. In the instant matter, Dowel does not rely on the innocent owner defense, but rests on the assertion that it was not the owner of the property when disposal occurred. As such, this Court's discussion of the innocent owner defense is aimed only at establishing that its construction leads inevitably to the conclusion that CERCLA's definition of "disposal" involves an active component. *See Petersen, supra.* For discussion of the innocent owner defense, *see Steego Corp. v. Ravenal*, 830 F.Supp. 42, 51–52 (D.Mass.1993) (innocent owner defense inapplicable because release of hazardous substances continued for five years after defendants purchased the property); *U.S. v. Pacific Hide & Fur Depot, Inc.*, 716 F.Supp. 1341, 1349–50 (D.Idaho 1989) (question of fact existed as to whether defendants "were owners or operators *at the time of the disposal* ...").

The innocent owner defense relieves a potentially culpable party of liability when that party can show that it lacked privity to the third party actor actually responsible for the contamination at issue. In the absence of an employee, agency, or contractual relationship (including the purchase of a facility after "disposal or placement of the hazardous substance on, in, or at the facility ...."), the former owner of the contaminated facility is shielded from liability for the third party's disposal of contaminants thereon. *Id.* at 1352 (citing 42 U.S.C. §§ 9607(b)(3) and 9601(35)(A)). Judge Conlon, in *Petersen*, interpreted these CERCLA provisions *in pari materia*, concluding:

> The [innocent owner defense] sheds light on the issue [of the meaning of "disposal"] in three ways. First, in order for the defense to apply in all but the rarest of circumstances, "disposal" must be limited to its active meaning. Otherwise, this defense would be available only to innocent owners who are fortunate enough to have purchased a facility where all the hazardous waste is sealed in concrete—any seeping or leaking on a site occurring after the purchase would simply eliminate the defense. Put simply, the amendment on its face has a plain purpose: to exclude from liability owners who bought after the hazardous waste was placed on the land and knew nothing about the hazardous waste at the time of Purchase. [ ] Giving "disposal" passive content would eviscerate that plain purpose. Second, by juxtaposing the two terms, the amendment makes the relative scope of "release" and "disposal" unequivocally clear. The reference to a period "after" a disposal but during ("is the subject of") a "release" or "threatened" release establishes that "disposal" refers to a discrete human act with a discrete ending. Finally, the [innocent owner defense] likens a "disposal" to a placement, which also requires an affirmative human act.

806 F.Supp. at 1352 (footnote omitted).

*Petersen* proceeded to examine this conclusion in light of other references in CERCLA

to "disposal," conscious of the danger of 'doing violence' to the underlying policies of CERCLA. Concluding that the strict liability facet of CERCLA has been diluted, at least partially, by the exculpatory provisions of the innocent owner defense, the *Petersen* court found that exculpating those former owners who were not responsible for disposal hardly offended Congressional intent. Judge Conlon reached "[t]he inescapable conclusion ... that giving 'disposal' a passive meaning controverts the plain language of CERCLA." *Id.* at 1352.

While several courts agree with *Petersen*, others differ. *Accord Ecodyne Corp. v. Shah*, 718 F.Supp. 1454, 1456–57 (N.D.Cal. 1989) (the court, having engaged in a grammatical and structural analysis of the word "disposal" in the CERCLA context, concluded that the "provision [§ 9607(a)(2) ] ... only provid[es] an action against prior owners or operators who owned the site at the time the hazardous substances were introduced into the environment."); *Snediker Developers Ltd. Partnership v. Evans*, 773 F.Supp. 984, 988–89 (E.D.Mich.1991) ("the mere migration of hazardous waste, without more, does not constitute disposal within the meaning of § 6903(3)."); *In re. Diamond Reo Trucks, Inc.*, 115 B.R. 559, 565 (Bankr.W.D.Mich. 1990) (the same). *Contra Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992) ("disposal" may occur without any volitional human participation); *Northwestern Mut. v. Atlantic Research*, 847 F.Supp. 389, 398 (E.D.Va.1994) (following *Nurad*); *In re Tutu Wells Contamination Litigation*, 846 F.Supp. 1243, 1282 (D.Virgin Islands 1993) (following *Nurad*) [10]; *H.R.W. Systems, Inc. v. Washington Gas Light Co.*, 823 F.Supp. 318, 339 (D.Md. 1993) (the same); *Stanley Works v. Snydergeneral Corp.*, 781 F.Supp. 659, 661–64 (E.D.Cal.1990) (a review of "disposal" cases led the court to decline to follow *Ecodyne*,

---

**10.** *In re Tutu* was also influenced by the principle that Congress sought to impose strict liability under CERCLA, as enunciated by *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir.1985). That principle had, however, been expressed prior to the amendment affording the innocent owner defense. Therefore, this Court finds the continued worth of *Shore Realty* questionable. *See Petersen, supra.*

persuaded instead that "[i]t is ... consistent with th[e] legislative scheme ... to include within the sweep of liability past owners who owned the property ... during a period in which the property was actively discharging contaminants into the environment.").

■ This Court finds *Petersen* to be well reasoned and accurate in its construction of the over-all thrust of CERCLA's Congressional intent *vis-a-vis* "disposal" liability as opposed to the mere triggering of the Executive's response authority when a "release" occurs. As such, when viewed in conjunction with other cases reaching a like conclusion, and when contrasted to those cases holding to the contrary, *Petersen*'s holding that "disposal" does not encompass a passive element is adopted by this Court. Accordingly, its mere ownership of the Property at a time when contamination may have been leaching, leaking or moving through its soil or groundwater is not enough, by itself, to render Dowel liable for CERCLA "disposal."

■ Because the Court is satisfied that disposal requires some element of active human participation before owner liability for disposal can attach under CERCLA, the issue then becomes whether, during its tenure at the Property, Dowel actively disposed of contaminated materials. HMAT contends that because Dowel commissioned a subsurface investigation of the Property, it was responsible for discharging preexisting contaminants into the groundwater.

Several courts have concluded that when contaminants are upset during excavations and fillings of landfills, the CERCLA requirements for disposal are satisfied. *See, e.g., Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir.1988) ("disposal" extends beyond initial introduction of hazardous materials onto property to include the move[ment], dispers[al], or release[ ] [of such substances] during landfill excavations and fillings"). *See also Kaiser Aluminum v. Catellus Dev.*, 976 F.2d 1338, 1342–43 (9th Cir.1992); *Portsmouth Redev. & Hous. Auth. v. BMI Apts. Assoc.*, 827 F.Supp. 354, 358 (E.D.Va.1993);

*Burlington Northern v. Woods Industries*, 815 F.Supp. 1384, 1392 (E.D.Wash.1993).

Before analyzing whether Dowels' conduct met the criteria for active disposal, it is helpful to review that conduct which other courts *have* found to meet that threshold. In *Tanglewood*, the defendants had built a housing subdivision on the property in question and in the course of grading the subdivision, they had spread contaminated soil over the whole site. 849 F.2d at 1573. In *Kaiser*, the defendant had excavated tainted soil and moved it to other previously uncontaminated sections of the property. 976 F.2d at 1342. In *Burlington*, the defendant had demolished a contaminated building and pushed its walls into the basement, thereby potentially contaminating the groundwater. 815 F.Supp. at 1392. The allegation that the defendant in *Portsmouth* had " 'moved some dirt around in the course of constructing the apartment buildings now on the site' " was sufficient leave open a factual issue regarding disposal in that case. 827 F.Supp. at 357–58.

In the instant matter, HMAT attempted to equate Dowel's activities on the Property with those of the defendants in the above line of cases, thus attempting to show that Dowel's conduct constituted active disposal. HMAT has contended that "Dowel prepared the property for development, including performing compaction studies, digging and drilling soil borings and running drilling rigs across the property." HMAT's Statement of Undisputed Facts, p. 2. The work was carried out for Dowel by Thor Engineers, Inc. ("Thor"). HMAT pointed out that eight drive borings were made by Thor [11] to depths of twelve to eighteen feet, each encountering groundwater, and that in three of these "excavations," waste materials collapsed into the holes during drilling. Affidavit of Laura E. Truettner, ¶ 12. Truettner concluded that the Thor borings resulted in the contamination of clean soils with "sanitary and petroleum waste and other types of waste material." Truettner Affidavit at ¶ 11. Truettner also concluded that contaminated materials were probably left on the surface of the property by Thor and that these materials probably

---

**11.** While the parties agree on the number as being eight, the Court notes that a review of the

Thor Report indicates that in fact nine borings were made, being numbered 1 through 8A.

spread and contaminated clean soils. Truettner Affidavit at ¶ 13. Generally, Truettner concluded that Thor "did not follow the standard operating procedures for investigative work typically in use at potential waste disposal sites." Truettner Affidavit at ¶ 14.

Dowel has countered HMAT's conclusions (which Dowel terms "conjectures") by showing that the borings undertaken by Thor were "open", *i.e.* that they consisted of tubes being driven into the ground at prescribed depths and extracted with soil in them. Each boring had a casing with an inner diameter of one and three-eighth inches. According to Thor's principal in charge of the borings, Peter Wilner, no drills were used; no cuttings were generated; no soils or other materials were in any way spread around the Property; and no holes were left open which might allow the infiltration of foreign materials. Wilner submitted under oath that the "open" method of boring used by Thor at the Property "does not cause underground mixing or shifting of subsurface materials." Affidavit of Peter Wilner, ¶¶ 2–7.

This Court must decide, based on these facts and the differing conclusions drawn from them by the parties, whether the investigative work commissioned by Dowel and carried out by Thor constituted "disposal" as interpreted by the *Tanglewood* line of cases. Initially, the Court must recognize that HMAT has not pointed to any concrete evidence that the Thor borings uncovered or disturbed any actual contaminants or caused same to become mixed with clean soil. The Truettner Affidavit, although the affiant is apparently an experienced scientist, amounts to little more than a speculative attempt at the reconstruction of a series of borings conducted almost thirteen years before on a site since made infamous as a Superfund site. Truettner has painted a picture in which Thor has become the creator of mass contamination on a site later to prove an environmental wasteland. Thor, on the other hand, has minimized its role by suggesting that its conduct was innocuous. And yet both their respective patrons, HMAT and Dowel, assert that there are no issues of material fact outstanding in this matter. The Court, albeit only by untrammelled vi-

sion of the forest notwithstanding the trees, concurs.

Even assuming, *arguendo,* that Dowel—by the hand of Thor—had done as HMAT and Truettner contends, the Court would have to find Dowel's conduct insufficient to confer upon it CERCLA disposal liability. Needless to say, therefore, under Dowel's version of the facts, a similar result would ensue. Under the *Tanglewood* line of cases, the Thor investigation fell short of that conduct accepted as being enough of a disturbance to constitute disposal. *Compare supra Tanglewood* (building a housing subdivision); *Kaiser* (excavating and moving contaminated soil onto clean soil); *Portsmouth* (allegation of dirt shifting during the course of constructing apartment buildings); *Burlington* ("pushing the walls of a building into the basement to fill it in [could allow a jury to find] that the buried building materials have contaminated (or threaten to contaminate) the groundwater").

Under their worst possible portrayal, the Thor borings cannot match these scenarios. Indeed, the *Portsmouth* court was hesitant to accept an allegation of dirt shifting—in the course of constructing apartment buildings— as sufficient to survive a Fed.R.Civ.P. 12(b)(6) motion:

> the allegations of the complaint are legally sufficient [on a *Tanglewood* construction of "disposal"], *albeit marginally,* to survive as a matter of law because the plaintiffs may be able to establish that the construction activity ... *falls within the applicable definition of disposal.*

827 F.Supp. at 358 (emphasis added).

Likewise, this Court is unwilling to encompass within the term "disposal" as used in CERCLA the type of borings conducted by Thor on the Property. To do so would be an unjustified expansion of the proper principle enunciated in *Tanglewood*—namely that significant disturbance of already contaminated soil constitutes disposal—and is particularly inappropriate in a case such as that presently before the Court.

For the foregoing reasons, this Court concludes as a matter of law that HMAT has failed to establish a prima facie case of

CERCLA disposal liability against Dowel in this matter. Accordingly, summary judgment is entered in Dowel's favor on that element of HMAT's case.

## STATE LAW CLAIMS

### ERA claim

■ Dowel seeks summary judgment on HMAT's state law claims on the ground that HMAT, as a private entity, lacks standing to assert a claim under the New Jersey Environmental Rights Act ("ERA"). The ERA provides in pertinent part that:

> a. Any person may commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.

N.J.S.A. 2A:35A–4(a).

The primary prosecutorial responsibility for enforcing the state's environmental laws resides in the government, and the ERA anticipates private parties' standing only when the government has failed to properly act. *Superior Air Products Co. v. NL Industries, Inc.*, 216 N.J.Super. 46, 58, 522 A.2d 1025 (App.Div.1987). In this case, the government has already taken action to redress the situation at the Sharkey Landfill Superfund site, which encompasses the Property. The state and federal authorities continue to ensure cleanup of the site and are aggressively pursuing the parties they deem responsible for the contamination. Unless and until the government can be shown to have fallen short in its dedication to full enforcement of the respective statutes and regulations involved, HMAT cannot maintain an ERA action. *Allied Corp. v. Frola*, 730 F.Supp. 626, 636 (D.N.J.1990).

■ The ERA does not provide private citizens with an independent substantive right or cause of action. *Bowen Engineering v. Estate of Reeve*, 799 F.Supp. 467, 478–79 (D.N.J.1992). However, an action for injunctive or equitable relief may be brought by a private entity "to compel compliance with a statute, regulation or ordinance, or to assess civil penalties for the violation as provided by law." N.J.S.A. 2A:35A–4(a). To avail of this provision the claimant must bring suit while the defendant's acts are either ongoing or imminent. *Id.*

■ In the instant matter, any violation engaged in by Dowel has long since ceased. Dowel sold the Property in 1987, and has had no control over it since then. As such, this latter provision of the ERA cannot apply to Dowel in the instant matter, and must be dismissed for lack of standing.

### Spill Act claim

Dowel has demanded summary judgment on HMAT's Spill Compensation and Control Act ("Spill Act") claims on the grounds that Dowel's conduct on the Property failed to meet the Spill Act's prerequisite for liability, namely "discharge." The Spill Act imposes liability against "[a]ny person who has discharged a hazardous substance or is in any way responsible for any hazardous substance ..." N.J.S.A. 58:10–23.11g(c)(1). The Spill Act defines "discharge" as:

> [A]ny intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State ...

N.J.S.A. 58:10–23.11b(h).

The state courts of New Jersey have concluded that the definition of "discharge" in the Spill Act does not encompass continuing contamination from an old spill. *Atlantic City Municipal Utilities Authorities v. Hunt*, 210 N.J.Super. 76, 98, 509 A.2d 225 (App.Div.1986). The Appellate Division stated clearly its position:

> We conclude that the Legislature intended "discharge" to mean a release into the air, water or land of a hazardous or toxic substance. The pouring of hazardous waste on the ground [is] a discharge....
>
> Plaintiff here contends that continuing contamination over the years by leaching constitutes a discharge. We disagree with this.

*Id.* at 96, 509 A.2d 225. *See also State, D.E.P. v. J.T. Baker Co.*, 234 N.J.Super. 234, 240, 560 A.2d 739 (Chan.Div.1989), *aff'd*, 246

N.J.Super. 224, 587 A.2d 279 (App.Div.1991); *Township of South Orange Village v. Hunt*, 210 N.J.Super. 407, 419, 510 A.2d 62 (App. Div.1986).

Based on this interpretation of discharge, mere ownership of a property on or in which contamination was ongoing before the particular owner's watch does not trigger Spill Act liability. The language of a case from the New Jersey Chancery Division is instructive—if not prophetic—in determining Dowel's responsibility for any contamination which may have been ongoing through no fault of Dowel's between 1981 and 1987:

> As the [ ] facts indicate, [the defendant] has not "discharged" within the meaning of the statute. Many years prior to [defendant] acquiring the property in question oil had been placed onto and into this land. The escape of that oil occurs without the intervention of [defendant] and has been ongoing for many years. [Defendant] has not changed the situation as it may have existed at the time of its acquisition of the property.

*State v. Exxon Corp.*, 151 N.J.Super. 464, 472, 376 A.2d 1339 (Chan.Div.1977).

Likewise, even under HMAT's portrayal of Dowel's conduct on the Property during the Thor investigation, the courts of New Jersey would refuse to find that the Thor's soil borings were enough to cause discharge under the Spill Act. In *D.E.P. v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983), the present owner of a contaminated property engaged in demolition and construction on the site. *Id.* at 485, 468 A.2d 150. In fact, he had used and spread mercury-contaminated water over the property. *Id.* However, the New Jersey Supreme Court acknowledged that the property had actually been contaminated by its previous owners, and that the present owner's conduct had done little if anything to exacerbate that condition.

> [The prior owners], not Mr. and Mrs. Wolf [the present owners], polluted the énvironment. During their ownership, the Wolfs have not continued to dump mercury and they have been responsible for only a minimal aggravation of the underlying hazardous condition.

*Id.* at 493, 468 A.2d 150 (observing that the lower courts' determination of the Wolfs' freedom from cleanup or containment cost liability).

Although *dictum*, the above language from *Ventron* bespeaks a sensible application of the Spill Act and is in accord with the application of CERCLA *vis-a-vis* "disposal." Accordingly, this Court must find that HMAT's lack of proof that Dowel actually caused contamination or even exacerbated any existing contamination on the Property is fatal to HMAT's Spill Act's "discharge" claim. Therefore, HMAT's Spill Act claim fails and is dismissed.

## WPCA claim

HMAT has also asserted the Water Pollution Control Act ("WPCA") against Dowel. Liability under the WPCA

> is limited to violators who have discharged a pollutant into waters of the State or onto land from which it might flow or drain into such waters. Discharge is defined as "releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping [of a pollutant into the waters ...]."

*D.E.P. v. Arky's Auto*, 224 N.J.Super. 200, 205–06, 539 A.2d 1280 (App.Div.1988). *See also* N.J.S.A. 58:10A–3(e).

"Discharge" in the context of the WPCA does not include the mere continued escaping of contaminants into water. As found in *D.E.P. v. J.T. Baker*:

> ... as a matter of law, a discharge under the WPCA is also a new release from a contained area and [ ] continued leaching, contamination, flowing out and issuing or pre-enactment discharges from the soil into the waters of this State do not subject the owner to penalties under the WPCA.

*Id.*, 234 N.J.Super. at 246, 560 A.2d 739.

*J.T. Baker*, when read in conjunction with *Arky's, supra* (because the owner of the property did not itself *cause* any discharge, it could not be liable under the WPCA), leaves no doubt that undisturbed continued contamination of groundwater by itself is not enough to impose WPCA liability on a passive owner. Additionally, because HMAT has presented no proof that Dowel either caused, contribut-

**1088**

ed to, or exacerbated the continued leaching, contamination, flowing out or issuing of discharges into water on or under the Property, the Court cannot allow HMAT's WPCA claim to proceed. Therefore, that element of HMAT's case is dismissed.

**SWMA claim**

 Finally, HMAT's Solid Waste Management Act ("SWMA") claim must fail because the premise for liability thereunder, namely "disposal," is essentially the same as the premise for CERCLA liability discussed *supra.* *Compare* N.J.S.A. 13:1E–3(c) *with* 42 U.S.C. § 6903(3). The parties have cited no case law on the nature of "disposal" under the SWMA and the Court's independent research has uncovered no cases from the state courts of New Jersey nor from this Circuit construing the similarity of CERCLA and SWMA in this regard. Based on the Court's earlier discussion of the term "disposal" in the CERCLA context, however, the Court is convinced that to apply a different connotation to the term merely because it is found here in a state statute—which is aimed at resolving identical environmental concerns as is CERCLA—would be simply wrong. As such, the term "disposal" in SWMA shall be given the same effect as was given it in the context of CERCLA, and based on the earlier lengthy discussion of the term in the latter context, HMAT's SWMA claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, Dowel's cross-motion for summary judgment is **GRANTED**; HMAT's cross-motion is **DENIED**; and HMAT's third party suit against Dowel asserting claims under CERCLA, the Environmental Rights Act, the Spill Compensation and Control Act, the Water Pollution Control Act, and the Solid Waste Management Act are hereby **DISMISSED**.